Anderson vs. The State.

## ANDERSON VS. THE STATE.

1. CRIMINAL PRACTICE : *Oath of jury. Entry of.*
   It is not necessary to enter upon the record the *form* of oath administered to the jury. It is sufficient for the entry to show that they were duly sworn. The supreme court will presume, in the absence of a contrary showing, that they were sworn according to law. But if the form of oath administered is entered of record, and appears not to be in substance and legal effect the oath prescribed by law, it will be error.

2. WITNESS: *Not impeached by proving indictment against.*
   A witness can not be impeached, nor his testimony impaired, by proving that he had been indicted for larceny.

3. PRACTICE IN CIRCUIT COURT : INSTRUCTIONS: *Judge must charge in writing.*
   It is the duty of the circuit judge, at the request of a party, to reduce his charge to writing.

APPEAL from *Drew* Circuit Court.

Hon. T. F. SORRELLS, Circuit Judge.

*R. L. Elliott,* for appellant.

*Mr. Attorney General Henderson,* for appellee.

ENGLISH, C. J.   James Anderson was indicted, tried, found guilty, and sentenced for rape, in the circuit court of Drew county; a new trial was refused him; he took a bill of exceptions, and prayed an appeal, which was allowed by one of the judges of this court.

I. There was a demurrer to the indictment, which the court overruled.

After the usual caption, the indictment is as follows:

" The grand jury of Drew county, etc., etc., accuse James Anderson of the crime of rape, committed as follows, to-wit:   The said James Anderson, in the county aforesaid, on or about the twenty-third day of September, A. D. 1878,

17

did feloniously make an assault in and upon one Eliza Burks, a female; and that he, the said James Anderson, did then and there feloniously ravish and carnally know her, the said Eliza Burks, forcibly, and against her will, contrary to the statute in such cases made and provided, and against the peace and dignity of the state of Arkansas."

The beginning of the indictment is in Code form. *Gantt's Dig.*, sec. 1797.

The offense is charged substantially in the language of the common law precedents for indictments for rape. *2 Arch. Cr. Pract. and Plead. (6th B.), p. 304; 2 Bishop on Cr. Proc.*, sec. 907.

The statute defines rape to be the carnal knowledge of a female, forcibly and against her will. *Gantt's Digest, sec. 1300.*

The objection taken to the indictment, in the demurrer, that it does not aver that the female alleged to have been injured, was a human being, is simply frivolous. No such an averment is to be found in any of the precedents for indictments for the crime of *rape*. The court properly overruled the demurrer.

II. The following is the record entry, as copied in the transcript, of the swearing of the jury:

"The parties announcing themselves ready for trial, it is ordered that a jury come to try the issue in this cause; whereupon came T. C. Erwin, etc. (naming eleven others), who are duly selected, impannelled and sworn, to well and truly try the issue herein, and, after hearing the evidence adduced, argument of counsel, and charge of the court, retire to consider of their verdict," etc.

It is submitted, for appellant, that the entry sets out the

Anderson vs. The State.

form of oath administered to the jury, and that it is not in the form prescribed by law.

The statute provides that the jury shall be sworn, substantially, as follows:

" You, and each of you, do solemnly swear that you will well and truly try the case of the State of Arkansas against A. B., and a true verdict render, unless discharged by the court, or withdrawn by the parties." *Gantt's Digest, 1921.*

The code makers changed the form of oath formerly administered in this state, which was the substance of the oath as administered in England, and made no improvement upon it. See *Patterson v. State, 7 Ark., 59.*

It is not necessary for the clerk to enter the form of oath administered to the jury. It is sufficient for the entry to show that they were duly sworn, and this court will presume, in the absence of a contrary showing, that the court below caused them to be sworn as prescribed by law. But if the form of oath administered is entered of record, and appears not to be, in substance and legal effect, the oath prescribed by law, it will be error. Such is the effect of the previous decisions of this court. *Greenwood v. State, 17 Ark., 467,* and cases cited; *Harper v. State, 25 Ark., 83; Palmore v. State, 29 Ark., 253.*

The judgment of the court is, that in making the entry above copied, the clerk did not attempt or intend to set out the whole of the oath administered to the jury. The entry is similar to that in *McDaniel v. Hanauer et al., 25 Ark., 48.*

III. The first, second and third grounds of the motion for a new trial relate to the sufficiency of the evidence to support the verdict. The substance of the testimony will be stated below, in considering the fourth cause assigned

for a new trial, which is that the court admitted improper evidence.

The substance of the testimony of ELIZA BURKS, the female alleged to have been outraged, is, that she occupied a house with one door and one window, in Monticello, Drew county. On a Monday, in the latter part of September, 1878, she washed very hard, and was tired at night. She cooked supper, and a while after dark, her husband being absent driving for Col. Slemmons on his canvass, she locked the door, and she and her two little children went to bed. The window was nailed down. Some time during the night, she supposed about 10 or 11 o'clock, but had no time-piece, somebody woke her up by rubbing his hands over her face and head. She said, who is that? He said nothing. She said again, who is that? Then he said, hush; if you "hollow" I will kill you. Then he caught her throat with his hand, and choked her so she could not "hollow." Then he got on her, with his knees on her stomach, and said, I have got you where I want you, etc. Witness then proceeded to state the means by which he forced and outraged her. When he got through, he jumped off of her bed into a dark corner of the room, and she was afraid to move for fear he would kill her. He then jumped out through the window. She saw him the best she could. It was a star-light night. During the time he was outraging her, she felt his face and short whiskers. He was a full-faced man; he had on no coat; his shirt was neither white nor black; it seemed to be a yellowish-colored, woolen shirt. The window was raised open with a stick of stove-wood, etc. She had never seen the prisoner but once before, when he was pointed out to her. She thought it was he that committed the rape upon her, but was not certain.

Hers was the only direct testimony connecting the prisoner with the rape. Other witnesses testified to some circumstances to which the jury may have attached more or less weight in making up their verdict.

MARTHA PACKARD, a witness for the state, testified in substance and effect, that the prisoner confessed to her that he had committed the rape. She also indicated that she was inimical to the prisoner.

The prisoner then introduced JESSE J. HANKINS, as a witness in his behalf, who testified that he was acquainted with the reputation of *Martha Packard* for truth and veracity in the community where she lived; that it was bad, and that from that reputation he would not believe her on oath.

The state then proved by Jack Collins, Charles Hightower, Green Wilson and Peter Ragland, that they were acquainted with the reputation of *Martha Packard* for truth and veracity in the community where she lived; that it was good, and that they, from that reputation, would believe her on oath.

*John H. Hammock,* sheriff of Drew county, was then sworn as a witness for the state, and permitted to testify against the objection of the prisoner, that Martha Packard had not, at any time within his knowledge, been indicted for any crime or misdemeanor in that county. That Jesse J. Hankins, the witness for the defense, had been indicted by the grand jury of Drew county, at some former term of the court, for grand larceny, but that he had been unable to find the principal witness. That Hankins had never been tried, or convicted of the offense.

This testimony was inadmissible, and should have been excluded from the jury by the court.

A witness may be disqualified, and excluded from testi-

fying, by proper evidence that he has been convicted of any infamous crime. *Gantt's Dig.*, sec. *2482*. But it was not competent for the state to impeach Hankins, or discredit him, or impair the weight of his testimony, by proving that he had been indicted for larceny.

" A witness may be impeached, etc., by evidence that his general reputation for truth or immorality renders him unworthy of belief, but not by evidence of particular and wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony." *Gantt's Dig.*, sec. *2524*. The character of an impeaching witness may be so impeached. *1 Wharton on Evidence, sec. 568, and cases cited.*

IV. The fifth ground for a new trial, as stated in the motion, is in substance that Nancy Raymond was permitted to testify that defendant had entered her room, in which she slept at night, and attempted to carnally know her, and that this testimony was not excluded from the jury.

The bill of exceptions, which purports to set out all of the evidence introduced at the trial, fails to show that Nancy Raymond was introduced as a witness, or gave any testimony whatever.

V. The only remaining grounds for a new trial that need be noticed is, that the court charged the jury orally, after the written instructions offered by plaintiff and defendant had been agreed upon, against the defendant's objection.

It appears from the bill of exceptions that the court gave all the instructions moved on behalf of the state, and also all that were asked for defendant, and that " the court, after the conclusion of the argument in the case, against the objection of defendant, charged the jury orally as to their duties generally upon the case."

What the court said to the jury in its general charge does not appear, nor is it shown that the court was requested by the prisoner to reduce the charge to writing.

If the court, in the exercise of its constitutional duty to declare the law to the jury, committed any error in the judgment of the counsel for the prisoner, it would have been the duty of the judge, at his request, to reduce the charge to writing, that it might be reviewed on appeal. But no such request was made, and the charge is not before us. *Sec. 23, art. 7, Const.*

We find in the record but one error, that is the admission of the testimony of Hankins. The life of the prisoner, perhaps, hung on the testimony of Martha Packard, who swore that he confessed the crime to her. He attempted to impeach her by the testimony of Hankins, and the state was permitted to discredit him by proving that he had been accused for larceny. We can not undertake to say that the prisoner was not prejudiced by the admission of this evidence. It may have influenced the minds of the jurors.

For this error, we deem it safer, in a case involving the life of the prisoner, to reverse the judgment and remand the cause for a new trial.