OXIER et al vs UNITED STATES.

Opinion delivered November 28, 1896.

*1. Indictment—Larceny—Description of Property—Ownership.*

An indictment charging the larceny of a steer, the owner of which is to the grand jurors unknown, states the description of the animal stolen with sufficient definiteness. However, if the name of the owner could have been obtained by the grand jury, by the exercise of ordinary diligence, a conviction under such indictment cannot be sustained.

*2. Ownership Known at Trial—Not Known to Grand Jury.*

When the ownership of property stolen is known at the time of the trial, and the indictment charges it as belonging to persons unknown to the grand jury, it must appear affirmatively that the ownership of the property was unknown to the grand jury finding the indictment.

*Declarations of Ownership—Inadmissible.*

Declarations of persons taking property from defendants, that they are the owners of the cattle, are inadmissible, to establish ownership of stolen property on a trial for larceny, unless shown to have been made in the presence of the defendant, and acquiesced in by him.

*Possession of Other Stolen Property.*

The possession of other stolen property by a defendant is competent evidence against him, when it can be connected with the transaction of which he stands accused. But before such testimony is admissible, it must be shown that the property in his possession was stolen property.

*Instruction—Must be Excepted to.*

When no exception is saved to an instruction, it cannot be considered on appeal.

*Possession of Stolen Property—Not Conclusive Presumption of Guilt.*

The recent unexplained possession of stolen property is not a conclusive presumption of guilt of larceny, but is a question of fact exclusively for the jury.

*7. Credibility of Witness—Cross Examination.*

> To test the credibility of a witness, he may be asked on cross-examination if he has been arrested for larceny, but the witness in such case may claim his privilege not to reply. If he does answer, his answer cannot be contradicted.

Appeal from the United States Court for the Southern District of the Indian Territory.

C. B. KILGORE, Judge.

Action against George Oxier and Ewalt Boone. From a conviction of larceny, they appeal. Reversed.

The opinion states the facts.

*H. B. Lockett*, for appellant.

An indictment, charging the theft of one steer from some person or persons to the Grand Jurors unknown, without any description of the steer, is fatally defective; for no person, handling cattle and innocent of a theft, could know or anticipate, from the charge in such an indictment, what particular steer the appellee would undertake to convict him of the theft of. An indictment must be certain and clearly apprise the defendant what particular offense the appellee will undertake to establish. So that he may be able to make his defense and so that a judgment founded on it would be a bar to a subsequent prosecution for the same offense. State vs Oakly, 51 Ark. 112; State vs Witbrow, 47 Ark. 551; McCowen vs State, 22 Ark. 955; Evans vs U. S. 153 U. S. 584.

The statements made to witnesses Cameron and Smith by Brown that he claimed a certain steer that had been in possession of appellants made in the absence of appellants were clearly inadmissible to establish ownership or for any purpose; being hearsay.

A witness can not be impeached, or his testimony impaired, by proving that he has been arrested or even

indicted for Larceny.    Anderson vs State, 34 Ark. 257; Bates vs State, 60 Ark. 450; Cline vs State, 51 Ark. 140.

An allegation in an indictment, that, the owner of the property alleged to have been stolen is to the Grand Jurors unknown, is a material one and must be proven.    Cameron vs State, 13 Ark. 717; Gabe vs State, 6 Ark. 519;  State vs Seely, 30 Ark. 162; Smith vs State, 24 S. W. 893.

A conviction for Larceny will not be sustained without evidence to show want of consent of the owner.    Swink vs State, 24 S. W. 893.

The possession of property recently stolen does not raise such a presumption of guilt, as would shift the burden of proof from the appellee to the appellant; and compel them to rebut it or authorize a jury to convict.    Boykin vs State, 34 Ark. 443.

*A. C. Cruce*, for the United States.

No brief is on file for appellee.

LEWIS, J.   The appellants, George Oxier and Ewalt Boone, were charged by indictment, containing two counts, with the offense of larceny.   The first count charged the theft of one steer, the property of one Jo Brown.   The second count charged the theft of a steer, the property of some person or persons to the grand jurors unknown.   The attorney for the government elected to go to trial upon the second count.   Objection is made to the sufficiency of this count, upon the ground that the description of the animal stolen should be more definite, when taken in connection with the allegation that the owner of the same is unknown. We think this objection unsound.   Rap. Larceny, § 83; 2 Bish. Cr. Proc. § 700.

*Larceny. Indictment. Owner of property unknown.*

The proof for the government showed that the appellants brought eight or nine cattle to the town of

Belcher, Tex.; that the next day after their arrival, they were arrested by the state authorities for larceny; that, after their arrest, a man by the name of Brown came to Belcher, claimed a steer branded T40, and was paid for it (by whom paid the evidence does not show); that a man from Henrietta claimed a steer branded L, and removed it; that a man by the name of Sheerwood claimed and carried away a steer branded OSO; and that a cow was sold in Nacona, but by whom sold the record does not disclose,—all of the animals being of the number brought to Belcher by appellants. Objection was made to the testimony showing that the cattle were claimed by the above parties, upon the ground that it was incompetent and prejudicial to the appellants, and because ownership could not be proven by declarations made in the absence of the defendants. The evidence does not show that the assertions of claim to the property were made in the absence of the defendants, further than as indicated by the objections of counsel, which were overruled. The government proved by the witness Gladney that, when he learned that Sherwood had the steer branded OSO, he went to him, claimed the animal as his own, and convinced Sheerwood of this fact, and obtained possession of the steer, and that he did not consent to the taking of the steer. There was other proof not necessary to be stated. The defense was that the appellant Boone made no claim to any of the property; that he simply accompanied Oxier to the town of Belcher, to which place he was taking some cattle of one Alexander Belcher, for mutual accommodation; that Oxier had bought the animals driven to Belcher by him. Appellants offered proof, which, if true, established this defense. Objection is made to the sufficiency of the evidence to support the conviction, for the reason that there was no proof that the name of the owner of the property was unknown to the grand jury, as averred in the indictment.

It is apparent from the statements heretofore made that the grand jury might have learned, by examining the witnesses for the government, the names of the persons who claimed and obtained the property at Belcher. If the verdict of the jury rests upon the finding that the appellants were guilty of the theft of any of this property, except Gladney's steer, the conviction cannot stand, because the names of these parties, if they were the owners, might have been learned by the grand jury by the exercise of any care or diligence, 1 Bish. Cr. Proc. § 549; Jorasco vs State, 6 Tex. App. 252; Cameron vs State, 13 Ark. 712. As to the Gladney steer, the record does not show that the grand jury knew who was the owner of the animal at the time the indictment was found, but that its ownership was known at the time of the trial. In such case the rule seems to be established by authority that proof must be offered to affirmatively establish the averment that the owner was unknown to the grand jury finding the indictment. 1 Bish. Cr. Proc. § 562; Rap. Larceny, § 104. In the absence of such proof, the conviction cannot stand for the theft of this animal, if we could assume that it was as to this animal that the jury rendered the verdict of guilty. If a conviction was sought as to the property claimed at Belcher, other than Gladney's steer, the declarations of the parties who carried the animals away that they were the owners were not competent to establish the fact of their ownership, unless the record had further shown that the claim of ownership was made in the presence of the defendants, and was assented to, or, at least, not denied by them, in which case the evidence would have been competent for the consideration of the jury. In the absence of such showing in the record, such testimony was inadmissible, and the objection to it should have been sustained. Cannada vs State (Tex. App.) 16 S. W. 341; Rap. Larceny, § 145.

If a conviction was not sought for the larceny of this property, then the declarations of these parties made at

*(margin notes: Conviction set aside. Proof must affirmatively show owner unknown to grand jury. Declarations of ownership inadmissible.)*

Belcher were more clearly inadmissible. It is true that the possession of other stolen property by a defendant is competent in evidence against him upon a trial for larceny, when it connects him with the transaction of which he stands accused, not as tending to prove another offense, but that one; but, before such testimony is admissible, it must be shown that the property in his possession was stolen property. 2 Bish. Cr. Proc. § 750. This fact must be shown by legal evidence.

*Possession of stolen property competent evidence against defendant.*

The court charged the jury as follows: "It is the law in this jurisdiction, and I charge you to that effect, that the possession of the property recently stolen raises the presumption of guilt against the defendants, or the party having the possession of the property. It is not conclusive, and, in my opinion, it is not prima facie evidence of guilt, but raises the presumption of guilt, which must be rebutted and dispelled by the defendants, or the party who was found in possession of the property recently stolen. He must, by reasonable explanation, show how he came into possession, in order to rebut that presumption; and, when he does that, he stands before the jury as though no such presumption had ever been indulged against him. He stands before the jury with the presumption in his behalf that he is innocent, if he has given reasonable explanation of the property recently stolen; and you are to be judge of the reasonableness of the explanation. If he has done that, and you are satisfied of that explanation, the presumption which attends all defendants in criminal trials attends him, and that is that he is presumed to be innocent until his guilt is established by competent testimony beyond reasonable doubt." Objections are urged to this charge, but, as exception was not reserved to the giving of this charge, the question of its correctness is therefore not before us. But the defendant requested the following charge: "If, when the defendants in this case were found in possession of property recently

*Improper instruction must be excepted to.*

stolen, if the proof showed the same was recently stolen, and, when their title and right of possession was first questioned, they gave a reasonable explanation of their claim to the property or its possession, then the burden of proof would shift to the government; and, before the jury can convict, the falsity of the statement or explanation made by the defendants must be proved by the government." To the refusal of the court to give this charge, exception was reserved.

In view of another trial, it is deemed proper to indicate our opinion with reference to the charge as given and refused. The defendants were entitled to the instruction, unconditionally, that a defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt. The question what the evidentiary effect of possession of property recently stolen is has been productive of an enormous number of decisions, which run the scale of inconsistency and conflict. The later and the sounder and better rule is believed to be that which makes the presumption arising from the possession of recently stolen property not a presumption of law, but of fact,—in other words, an inference to be drawn or not, as the jury may determine in the light of all the evidence. As Mr. Thompson, in his work on Trials, says: "The more recent and better view ascribes to it the character of a presumption of fact, which means that it is a presumption which the jury are at liberty to draw or not, as they see fit; and hence it does not necessarily become conclusive when not rebutted. The sound view is that whether the recent, unexplained possession of stolen goods is conclusive evidence that the possessor committed the larceny is a question of fact, exclusively for the jury; that such recent, unexplained possession does not create a conclusive presumption of law, which in the absence of explanatory evidence given at the

trial, the jury are bound to follow and apply, but that it is an evidentiary circumstance only, which, like other evidentiary circumstances, is to be weighed in the scales of their judgment, and receive such value as they may think proper to give it." 2 Thomp.' Trials, p. 1894; 2 Bish. Cr. Proc. 743. See, also, Wilson vs U. S., 162 U. S. 613, 16 Sup. Ct. 895.

The failure of the defendant in whose possession property recently stolen is found to offer a reasonable explanation of his possession when his right to the property is first questioned is a circumstance to go to the jury. It may have much or little weight, according to the facts of the particular case. Such weight is not a fixed quantity, ascertained in advance, and susceptible of exact statement by the judge to the jury, as a matter of law, but is a result, varying with the circumstances of each case, and resting wholly in the judgment of the jury. · If the defendant, at the time his right is challenged, offer an explanation which is reasonable and consistent, it is admissible as evidence in his behalf, and, ordinarily, should have much effect in the determination of his guilt or innocence. But, as the jury is the judge of the weight that is to be attached to the failure to explain, so are they the judges of the weight and conclusiveness of the explanation when made in the way of establishing the defendant's innocence. As we hold it incorrect to declare, as a presumption of law, that the fact of the possession of recently stolen property, unexplained, establishes the conclusion of the defendant's guilt, so it seems illogical and incorrect to declare that a reasonable explanation conclusively establishes his innocence, unless the government absolutely and in all things disprove the truth of his explanation when made. This latter doctrine is established in Texas, but it rests upon no sound foundation.

**Explanation of possession of stolen property.**

We have heretofore ·held that, under the rule in federal courts, the trial judge may comment upon the evi-

dence, and even express an opinion as to its sufficiency, provided the jury are made to know that they are the exclusive judges of the weight and effect of the testimony. While this is permitted the trial judge, instructions which give to the facts proven a presumptive effect as a matter of law, which the law does not attach to such facts, is more than a comment upon the evidence. It is a statement of the law, and must be regarded as error if exception be reserved.

As to the question whether a witness could be asked in cross-examination if he had been arrested for larceny, we concur in the conclusion of the trial judge that such question may be asked; that the answer of the witness cannot be contradicted where the question is simply for the purpose of affecting his credit; and that the witness in such case may claim his privilege not to reply, if he choose. This conclusion is believed to be supported by the better reason, is approved by all ths text writers, and by the weight of judicial opinion. 1 Best, Ev. § 130; Steph. Dig. Ev. p. 225; 1 Greenl. Ev. § 459; 1 Phil. Ev. 289; 1 Thomp. Trials, § 458; Carroll vs State (Tex. Cr. App.) 24 S. W. 100; Brandon vs State, 42 N. Y. 265; Real vs People, Id. 270; Wilbur vs Flood, 16 Mich. 40; State vs Taylor (Mo. Sup.) 24 S. W. 556. By section 2902 of Mansfield's Digest of Arkansas, which is in force in this territory, it is provided: "A witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for truth and morality renders him unworthy of belief, but not by evidence of wrongful acts, except that it may be shown by an examination of a witness or record of a judgment that he has been convicted of a felony." In Anderson vs State, 34 Ark. 257, proof by a third party that a witness for the defense had been indicted for felony, but not convicted, was held

*Cross examination*

inadmissible. In Carr vs State, 43 Ark. 99, it was held error to require witnesses for the defendant, upon cross-examination, to answer that they had been indicted for the same murder for which the defendant was being tried. The opinion in this case was based upon the Anderson Case, supra. In Bates vs State, 60 Ark. 450, 30 S. W. 890, it was held error to permit the defendant in a criminal case, who had taken the stand as a witness in his own behalf, to be asked on cross-examination if he had not been indicted for a felony. The opinion was based upon the authority of the two cases above mentioned. There is a clear distinction, recognized by the authorities cited above, between impeaching a witness by proof of facts which discredit him, made independently of his examination, and by proof of the same facts elicited in his cross-examination. Proof of particular facts tending to impair his credibility, made independently of his own examination, is excluded for the reason that its admission would engender a multiplicity of collateral issues, and would frequently surprise a witness with matter which he could not be prepared to disprove: but these reasons do not apply to his cross-examination as to the same facts, because the witness, better than any one else, can explain the impeaching matter, and protect himself to the extent that explanation will protect him; the cross-examining party being bound by his replies, and the abuse of the cross-examination being guarded against by the privilege of the witness to decline to answer any collateral question which might disgrace him or charge him as a criminal, and by the power of the court, on its own motion, to prevent an unreasonable or abusive cross-examination. The effect of section 2902, above set out, is to prevent the impeachment of a witness by facts not elicited from himself except in the instances allowed by that section. It is not believed, however, that this section, properly construed, was intended to abridge the latitude of cross-examination. The case of

Credibility of witness. How attacked?

Anderson vs State, supra, made a correct application of the statute. The two later cases followed the Anderson Case, but overlooked the distinction mentioned, and gave to section 2902 a wider range than it should have. The case of Hollingsworth vs State, 14 S. W. 41, by the Supreme Court of Arkansas, recognizes the distinction we have indicated, and evinces a disposition to abridge the scope of the ruling in the earlier decisions in that state, as above set out. While the construction by the Arkansas Supreme Court of the statutes put in force in this jurisdiction by act of congress has been held to be a part of such statutes, yet in this instance, where the construction of the statute may be in some sense left uncertain by the decisions of that state, and where the question is one of gravity, we are disposed to adopt that interpretation of the statute which seems to us to be in harmony with sound reason, and best adapted to the administration of justice. In this country, where the population is largely made up of newcomers, where time for the establishment of a reputation in the great majority of instances has not elapsed, where witnesses appear upon the stand daily who are strangers in the community, and whose antecedents are unknown, it imperils not only the rights of litigants, but the lives and liberty of defendants, to hold that such witnesses may not be subject to a cross-examination which may disclose, by their own admissions, something of their character, antecedents, and credibility, but that the abandoned ruffian may have the same credit before the jury as the witness of unblemished probity, unless it be possible, as it rarely is in the exigencies of the trial, and when the appearance of the witness in the community is often contemporaneous with his appearance in the witness box, to discredit him by his general reputation for truth and morality.

The other assignments of error are without merit. For the errors indicated, the judgment should be reversed and remanded.

SPRINGER, C. J. (concurring.) Appellants assign as error the fact that a witness for them, on cross-examination, was required to answer, over their objection, the questions: First, as to whether he had ever been arrested for anything; and, second, whether he had ever been arrested for horse stealing. To the first question, the witness answered that he had been arrested for cow stealing, and to the second he answered that he had. Three cases decided by the Supreme Court of Arkansas—namely, Anderson vs State, 34 Ark. 257; Bates vs State, 60 Ark. 450, 30 S. W. 890; and Cline vs State, 51 Ark. 140, 10 S. W. 225—are cited in order to establish the doctrine that a witness cannot be impeached, or his testimony impaired, by proving that he had been arrested or indicted for larceny. The counsel for appellee concede that the earlier decisions of the Supreme Court of Arkansas were to this effect, but he insists that in the case of Hollingsworth vs State (Ark.) 14 S. W. 41, that court materially modified its former ruling on this subject, and permitted such questions to be asked. It is a well-settled doctrine in this country that a witness may be cross examined as to specific facts tending to disgrace or degrade him, for the purpose of impairing his credibility, though these facts are purely irrelevant and collateral to the main issue; also, that the extent to which such questions may be allowed is to be determined by the discretion of the trial court, which commits no error unless it abuses its discretion; that the witness may claim the privilege of declining to answer, when the court allows such question, but that, when answers are called for which are material to the issue, there is no privilege. See Steph. Dig. Ev. (Am. Ed.) p. 225, note 1, and numerous American authorities there cited, in which the subject is fully discussed. In New York it appears that the rule confines the questions to the facts which tend to discredit the witness, or to impeach his moral character; and questions as to his having been indicted, arrested, accused,

etc., for wrongful acts, are, when properly excepted to, held improper, since these facts are consistent with innocence. See People vs Irving, 95 N. Y. 541. This rule applies to parties when they become witnesses. People vs Casey, 72 N. Y. 393; Chambers vs. People, 105 Ill. 409; Root vs Hamilton, 105 Mass. 22; Bissell vs Starr, 32 Mich. 299. Upon the trial of A. for murder in a case cited herein, he became himself a witness, and was asked, on cross-examination, whether he had not once been arrested for an assault with intent to kill. The court, against objection, admitted the question, and the witness then answered, without claiming his privilege. This was held a proper exercise of the court's discretion. See Hanoff vs State, 37 Ohio St. 178; Leland vs Kauth, 47 Mich. 508, 11 N. W. 292; People vs Manning, 48 Cal. 335; and, contra, People vs Crapo, 76 N. Y. 288.

From the foregoing examination of authorities on this subject, it will be seen that the rule is not uniform on this subject. We are, however, inclined to the opinion that the weight of authority permits such questions as were allowed in the case at bar to be put to a witness on cross-examination, and that the extent to which such questions may be allowed is to be determined by the discretion of the trial court, which commits no error in allowing such questions, unless it abuses its discretion. It is a general rule, with only two exceptions as to all collateral and irrelevant inquiries, whether relating to character or not, that answers given cannot be contradicted. The cross-examining counsel is bound by the answers given. The reason of this rule is that time may not be taken up with immaterial issues. To this rule, however, there are, as above stated, two exceptions: If a witness is asked whether he has been previously convicted of any felony or misdemeanor, and denies or does not admit it, or refuses to answer, evidence may be given of

(9)

his previous conviction thereof; and if a witness is asked any question tending to show that he is not impartial, and answers it by denying the facts suggested, he may be contradicted. See Steph. Dig. Ev. (Am. Ed.) pp. 227, 228, and authorities there cited. However, on the grounds stated in the opinion of the court, judgment in this case should be reversed.