# STATE v. SCHONBERG.

(140 N. W. 105.)

**Trial — larceny — witnesses — property — ownership.**

1. On a trial for larceny by defendant of certain feeder slats and chains belonging to M. & Co. and attached to a threshing-machine separator, the testimony to the state's witnesses disclosed that on the morning such property was stolen defendant was met upon the public highway near the place where the M. & Co. separator was located, having in his possession a bundle of slats with chains attached. The theory of the defense was that defendant procured the slats and chains which were in his possession from an old separator belonging to H. & F. by the permission of H. & F., and that they were not the property of M. & Co. At the trial M., a witness for the state, was asked on cross-examination whether the feeder on his machine could be operated without having the slats so close to each other. An objection was sustained to this question on the ground of immateriality and not proper cross-examination.

*Held*, that such ruling was correct.

**Witness — impeachment — testimony — relevancy.**

2. A question asked for the purpose of laying a foundation for impeaching a witness upon the ground of contradictory testimony given by him at the preliminary examination was properly excluded, it appearing that such question related to a subject-matter in no way germane to the testimony given by the witness at the trial.

**Evidence — materiality — foundation.**

3. Defendant sought to introduce in evidence a box of feeder slats which had been removed from his machine for the purpose of showing that they had to be cut off at the ends in order to fit his machine. This testimony was properly excluded as it had no material bearing upon the issue as to defendant's guilt or innocence. Nor was there any proper foundation laid for the admission of such testimony, as there was no showing that such slats were the ones which it was claimed had been stolen from the McKay machine.

**Evidence — self-serving declarations — hearsay — conversation.**

4. Defendant's brother was asked to narrate a conversation had with de-

---

Note.—While there is some conflict in the authorities as to whether the unexplained possession of goods recently stolen constitutes prima facie evidence of guilt, the cases seem to agree with the holding in STATE v. SCHONBERG, that such possession does not constitute affirmative proof of guilt, as shown in a note in 12 L.R.A. (N.S.) 199, on possession of recently stolen property as evidence of burglary.

fendant on the evening prior to the larceny, presumably for the purpose of showing that the defendant expressed to him his intention of going to Rolla to procure slats from the H. & F. feeder. Such testimony was properly excluded on the ground that it amounted to merely self-serving declarations and hearsay statements of the defendant. Any expressed intent by the defendant to his brother of his purpose that night was both incompetent and immaterial.

**Testimony — rulings.**

5. Certain other rulings excluding testimony offered by the defendant examined and held nonprejudicial.

**Jury — instructions — larceny — possession of stolen property — guilt — inference of.**

6. The court instructed the jury upon the question of the weight to be given the proof as to defendant's recent possession of the stolen property as follows: "If recently stolen property is found in the possession of the defendant within a short time after the commission of the crime of larceny, such finding is affirmative proof, under the law, that the defendant stole the property unless the defendant has explained to the jury how he came in possession of the property, so as to lead the jury to a reasonable doubt as to whether he is guilty or not guilty." The giving of such instruction was prejudicial error, as it, in effect, told the jury that they should treat such circumstance as an established fact showing guilt unless explained by defendant in a manner consistent with his innocence. The jury should have been instructed that the possession of stolen property, recently after the larceny thereof, when unexplained, may be sufficient to warrant the jury in inferring the guilt of the party in whose possession it is found; and whether such inference should or should not be drawn is a fact exclusively for the jury.

**Arguments of counsel — instruction to ignore — error.**

7. The court also instructed the jury in effect that they should, in deciding the case, ignore the arguments of counsel.

*Held*, following the rule announced by this court in Zilke v. Johnson, 22 N. D. 75, 132 N. W. 640, that the giving of such instruction was prejudicial.

Opinion filed February 11, 1913.

Appeal from District Court, Rolette County; *John F. Cowan*, J.

Defendant was convicted of the crime of petit larceny and from the judgment he appeals.

Reversed and remanded.

*William Bateson*, for appellant.

Before a witness can be impeached, a proper foundation must be

laid.   Jones, Ev. §§ 845, 846; 1 Greenl. Ev. 16th ed. § 461; Krause v. State, 88 Neb. 473, 129 N. W. 1020, Ann. Cas. 1912 B, 736; The Charles Morgan, 115 U. S. 69, 29 L. ed. 316, 5 Sup. Ct. Rep. 1172; State v. Hughes, 8 S. D. 338, 66 N. W. 1076; Ashton v. Ashton, 11 S. D.   610, 79 N. W. 1001; State v. Hazlett, 14 N. D. 490, 105 N. W. 617; State v. Pirkey, 22 S. D. 550, 118 N. W. 1042, 18 Ann. Cas. 192; Horton v. Chadbourn, 31 Minn. 322, 17 N. W. 865; Taugher v. Northern P. R. Co. 21 N. D. 111, 129 N. W. 747.

Declarations of a party which show motive or intention, are admissible, when such question of motive or intention is material.   16 Cyc. 1184; 1 Greenl. Ev. 16th ed. § 108; 1 Greenl. Ev. § 162; Jones, § 348; Com. v. Trefethen, 157 Mass. 185, 24 L.R.A. 235, 31 N. E. 961; Viles v. Waltham, 157 Mass. 542, 34 Am. St. Rep. 311, 32 N. E. 901; Mutual L. Ins. Co. v. Hillmon, 145 U. S. 285, 36 L. ed. 707, 12 Sup. Ct. Rep. 909; State v. Hayward, 62 Minn. 474, 65 N. W. 63; Hunter v. State, 40 N. J. L. 495; State v. Dickinson, 41 Wis. 299, 2 Am. Crim. Rep. 1; State v. Hazleton, 15 La. Ann. 72, cited in Wharton, Crim. Ev. 9th ed. § 496, note 6; Mathews v. Great Northern R. Co. 81 Minn. 363, 83 Am. St. Rep. 383, 84 N. W. 101; Cincinnati, I. St. L. & C. R. Co. v. Howard, 124 Ind. 280, 8 L.R.A. 593, 19 Am. St. Rep. 96, 24 N. E. 892; Denver & R. G. R. Co. v. Spencer, 25 Colo. 9, 52 Pac. 211; Lake Shore & M. S. R. Co. v. Herrick, 49 Ohio St. 25, 29 N. E. 1052, 10 Am. Neg. Cas. 8.

Whether a person can read, speak, or understand English is a question of fact, which may be testified to by others having knowledge. Gibbs v. State, — Tex. Crim. Rep. —, 20 S. W. 919; Re Cross, 85 Hun, 343, 32 N. Y. Supp. 933; Wren v. Howland, 33 Tex. Civ. App. 87, 75 S. E. 894.

Possession of recently stolen property is not presumptive evidence of guilt.   Tomerlin v. State, — Tex. Crim. Rep. —, 26 S. W. 214; Lee v. State, 27 Tex. App. 475, 11 S. W. 483; Oxier v. United States, 1 Ind. Terr. 85, 38 S. W. 331; State v. Walters, 7 Wash. 246, 34 Pac. 938, 1098; Ingalls v. State, 48 Wis. 647, 4 N. W. 785; Blaker v. State, 130 Ind. 203, 29 N. E. 1077; Stover v. People, 56 N. Y. 315; State v. Harras, 25 Wash. 416, 65 Pac. 774; Engleman v. State, 2 Ind. 91, 52 Am. Dec. 494; State v. Mandich, 24 Nev. 336, 54 Pac. 516; Metz v. State, 46 Nev. 547, 65 N. W. 190; State v. Deuel, 63 Kan.

811, 66 Pac. 1037; State v. Hoshaw, 89 Minn. 307, 94 N. W. 873; State v. Rosencrans, 9 N. D. 163, 82 N. W. 422.

All proper arguments of counsel are entitled to consideration by the jury as a part of the entire case. To charge the jury to ignore them is error. Rev. Codes 1905, Sec. 9984; Chicago Union Traction Co. v. O'Brien, 219 Ill. 303, 76 N. E. 341; People v. Ambach, 247 Ill. 451, 93 N. E. 310; Reeves v. State, 34 Tex. Crim. Rep. 483, 31 S. W. 382; People v. Hite, 8 Utah, 461, 33 Pac. 254; Long v. State, 23 Neb. 33, 36 N. W. 310; Zilke v. Johnson, 22 N. D. 75, 132 N. W. 640.

*D. J. McLennan,* State's Attorney, *Andrew Miller,* Attorney General, *C. L. Young,* Assistant Attorney General, and *Frederick T. Cuthbert,* respondent.

Assignments of error should specifically point out wherein error is claimed. Flora v. Mathwig, 19 N. D. 4, 121 N. W. 63.

The prior statement of a witness, in order to be provable for impeachment purposes, must be contradictory to or inconsistent with his testimony, and must relate to a material matter. 40 Cyc. 2701; Wharton, Crim. Ev. p. 993; Underhill, Crim. Ev. § 240.

The possession of recently stolen property not satisfactorily explained, is an evidential fact from which complicity in the larceny may be inferred. State v. Rosencrans, 9 N. D. 163, 82 N. W. 422; State v. Drew, 179 Mo. 315, 101 Am. St. Rep. 481, 78 S. W. 594.

The charge of the court upon reasonable doubt was proper, and not stronger than others approved by courts. Vann v. State, 83 Ga. 44, 9 S. E. 945; Dunn v. People, 109 Ill. 635, 4 Am. Crim. Rep. 52; State v. Ostrander, 18 Iowa, 459; State v. Pierce, 65 Iowa, 90, 21 N. W. 195; McGuire v. People, 44 Mich. 286, 38 Am. Rep. 265, 6 N. W. 669; 2 Thomp. Trials, §§ 2479–2488.

Fisk, J. Defendant was convicted in the district court of Rolette county of the crime of petit larceny, and was fined in the sum of $25 and the costs of the prosecution, and sentenced to the county jail of said county for the period of thirty days, or until such fine and costs are paid. From the judgment thus entered, he appeals, and the errors assigned relate solely to certain rulings excluding testimony offered by appellant at the trial, and to the instructions of the court

to the jury. Such assignments of error are grouped under certain general propositions which are set forth in the brief and will be considered in the order thus presented. Before noticing such assignments a brief statement of the facts is necessary to a proper understanding of the questions presented.

The information charges the larceny on November 3, 1911, of one complete set of slats and chain of a threshing-separator feeder, a complete chain and pulley sprocket and guide of a separator grain elevator, one leather belt about 3 inches wide, and one pulley shaft, the property of one Alex McKay, John Gardner, and John Wayne, known as McKay & Company. No proof was offered at the trial of the larceny of the pulley shaft, leather belt, or guide; and the evidence was confined entirely to the allegations as to the alleged larceny of the feeder slats and chains described in the information. For a further statement of the facts we here quote from appellant's brief as follows:

"The principal points in the evidence introduced by the state were that McKay & Company owned a threshing outfit in the fall of 1911, which was situated on November 3d, 1911, on the west side of Mount Pleasant township in Rolette county, North Dakota, and on the east side of the section line dividing that township from the Turtle Mountain Indian Reservation. November 3d, 1911, was on Friday. On the Tuesday prior to November 3d, the machine owned by McKay & Company was seen last by the owners, and at that time it was complete with all its fixtures and attachments. The feeder was up and ready for moving. The machine was not seen by them after that until the afternoon of November 3d. Then it was found that the feeder was down and that the slats had been uncoupled and removed, with the chains, the lower pulley, and the sprocket wheel.

The state introduced evidence showing the nature of the separator feeder. The feeder slats which had been removed were connected by chains at either end, which chains operated upon a sprocket wheel, somewhat similar to the canvas upon a binder. The purpose of the feeder slats was to elevate the grain into the separator. The length of the slats, chained together, when uncoupled and stretched out, was about 16 feet, and there were from 20 to 25 slats upon the chain. They were not new slats, but had been used considerably and were worn smooth. The corners of some of the slats had been worn off. These

were the slats, and this was the part of the separator which was missing on the afternoon of November 3d.

The state also introduced evidence that showed that one John Dunlop had seen the McKay threshing outfit on November 2d at about 4 o'clock in the afternoon, and that at that time the feeder, with the slats upon it, was intact; also, that on the morning of November 3d the said John Dunlop passed the defendant Schonberg on the road which passes the place where the machine stood. The defendant was coming from the machine and going towards his home. The defendant was driving a wagon, and Dunlop testified that he saw slats, connected with chains, in a bundle in the back of this wagon. Dunlop passed the defendant and went along the road toward the machine. When he passed it he noticed that the feeder was down and that the feeder slats were gone.

The state also introduced evidence by one Henry Meunier that he also saw the defendant on the 3d day of November, in the morning, on the road by the McKay machine, that the defendant had a buckboard buggy, and in the back end of the buggy a bundle of feeder slats, with chains on the slats. Said Meunier afterwards passed the McKay separator, and testified that the slats were then gone from the feeder, and the feeder was down.

The theory of the defense, on the trial of the case, was that the defendant got the slats which he had in the buggy on the morning of November 3d, from an old separator belonging to Harrington & Flynn, of Rolla; that he had made arrangements with them long before for the purchase of whatever slats he needed.

The defendant himself was interested in operating a threshing machine in the fall of 1911, and on the 3d day of November and for some days prior thereto had been threshing at the home of Alex Charlebois. Alex Charlebois's place, where the machine was working, was about 14 miles from where the McKay machine stood. On the afternoon of November 2d the defendant's machine broke down, some of the feeder slats being broken. The defendant's evidence showed that the feeder was repaired on the afternoon of the 2d after about one hour's delay, and thereafter continued to thresh without stopping, except to lay up for the night, until threshing was completed at Charlebois's. They had some extra slats, and made the repairs then and there. How-

ever, it was thought best by the defendant to get some additional supplies in case of another breakage, so in the afternoon of November 2d the defendant started out from Charlebois's place to drive to Rolla, and get some additional supplies for the separator. He drove from Charlebois's to his own home that night, and early the next morning got up and drove to Rolla. The McKay separator stood on the road which ran directly between the defendant's home and Rolla. On the morning of November 3d the defendant drove to Rolla, and went at once to Harrington & Flynn's·machine shed, where the separator stood, took the slats and chains which he desired, and then drove back to Charlebois's reaching Charlebois's place at noon on the 3d of November.

The defendant offered as proof of his innocence that the slats which were in his buggy on November 3d, and which he took to Charlebois's place, were not the same slats that were on the McKay separator. He offered evidence to show that he had made arrangements to get these slats from Harrington & Flynn, and that the slats which were in his buggy were the slats which came from Harrington & Flynn's separator. He offered corroborative evidence of this in addition to his own direct testimony, and his contention in this court is that the trial court closed the doors of proof to him, so that he was unable to establish his innocence."

The first assignment of error challenges the correctness of the ruling of the trial court in sustaining an objection to the following question propounded to the state's witness, McKay, on cross-examination: "Is it not a fact you can run a feeder without having the slats, the feeder slats, so close?" Such question was clearly immaterial, and the answer thereto could in no manner have contradicted, rebutted, or weakened the testimony in chief of such witness. Such ruling was therefore clearly correct.

The next assignment is predicated upon the ruling sustaining an objection to a question asked the witness Dunlop as to what he testified to at the preliminary examination for the purpose of laying a foundation for impeachment of such witness. There is no merit in such assignment. The impeaching question was not germane to any testimony given by the witness on direct examination, and was therefore clearly improper. A prior statement of a witness, in order to be provable for the purpose of impeachment, must be, in some degree, contra-

dictory to or inconsistent with his testimony on direct examination. Tested by this elementary rule the objection was properly sustained.

The assignments based on specifications of error 3 and 4 are devoid of merit. Defendant sought to introduce certain exhibits in the form of a box of feeder rakes which had been removed from his threshing machine, for the purpose of proving that they had to be cut off at the ends in order to fit his machine, and that the defendant's feeder was not the same as that of the McKay machine. It is argued that these exhibits tended to prove an absence of any motive on defendant's part to commit the crime charged against him. It is also contended that this proffered testimony had a tendency to prove that these slats were the ones claimed to have been obtained by defendant from a machine owned by Harrington & Flynn. There was no connection, whatever, shown between these slats and those alleged to have been stolen. It is therefore entirely clear that such testimony was wholly incompetent, irrelevant, and immaterial, and no proper foundation was laid for its admission.

The next assignment is predicated upon the rulings sustaining objections to certain questions asked the witness, Emil Schonberg, defendant's brother, relative to the conversation between them. This witness had testified that he and the defendant operated a threshing rig for their father in the fall of 1911, and while threshing for one Charlebois they broke three feeder rakes on the afternoon of the second day, and that evening the defendant left the separator and went away. Whereupon the witness was asked to narrate a conversation with defendant just prior to his leaving, but was prevented from so doing on the state's objection. What the alleged conversation was does not appear, as no offer of proof was made. We are unable to say that the rulings were either erroneous or prejudicial, nor are we able to perceive on what possible theory the questions were proper. Manifestly, the answers to the questions would have merely amounted to self-serving declarations and hearsay statements of the defendant. Any expressed intent by the defendant to his brother of his purpose that night, if shown, would have no tendency to disprove the acts charged against him, and which are alleged to have been committed on the following morning. He may have stated to his brother at the time in question that he did not intend to commit the larceny of this property on the

next day, but this would clearly not be any competent evidence of his innocence. If such testimony is competent, there could be but few convictions. We entertain no doubt of the correctness of the rulings here complained of.

Appellant next complains of certain rulings sustaining objections to questions asked the witness Emil Schonberg on direct examination relative to the number and size of the feeder slats brought there by defendant, and whether they fit his father's machine. Also whether it was necessary to cut a piece off of such slats in order to fit them to his father's machine. No offer of proof of these various matters was made, and it does not appear that such rulings were in any manner prejudicial to defendant. It is asserted by appellant's counsel that by such rulings he was deprived of the opportunity of showing defendant's innocence, by showing that the slats which he brought there and which he is charged with stealing from the McKay separator were, in fact, obtained elsewhere and from another machine of a larger size, etc. If such was the fact, direct proof thereof was within his power. But in any event, as before stated, we are unable to see how such rulings were prejudicial. The fact, if it be a fact, that the slats which defendant brought to the machine on this morning of November 3d, were too large for his father's separator, and that they had to be cut off in order to be fitted thereto, in no way tends to disprove the charge laid in the information, nor does the fact that they were attached or not attached to chains have any particular materiality. What we have above said relative to the rulings on questions propounded to the witness Emil Schonberg are equally applicable to the rulings complained of regarding the testimony of the other witnesses along the same lines.

Error is also assigned upon the court's ruling in excluding testimony bearing upon the defendant's ability to read and write. We perceive no error in such ruling. Under the state of the record such proof was wholly immaterial.

The assignment of error predicated upon specification 21 is untenable. In view of the testimony of the witness Wayne to the effect that the slats from the McKay machine could be used on the defendant's machine, it was immaterial what make of feeder was used on the latter. No attempt was made to show that Wayne's testimony was not correct, to the effect that the slats on these feeders were interchangeable. No

prejudice was therefore shown on account of the ruling here complained of.

This brings us to a consideration of the assignments relative to the correctness of the instructions to the jury. Among other things the following instruction was given: "If recently stolen property is found in the possession of the defendant within a short time after the commission of the crime of larceny, *such finding is affirmative proof under the law that the defendant stole the property,* unless the defendant has explained to the jury how he came in possession of the property, so as to lead the jury to a reasonable doubt as to whether he is guilty or not guilty." We think such instruction is an incorrect statement of the law, and the court in giving it committed prejudicial error necessitating a reversal of the judgment. The language of the instruction that such recent possession "is affirmative proof under the law that the defandant stole the property," in effect told the jury that they should treat such circumstance as an established fact showing guilt, unless defendant has explained his possession consistent with his innocence. Such is not the correct rule as we understand it. See the definitions of "proof" and "affirmative proof" in Words and Phrases. Also 25 Cyc. 131–133, and cases cited; 18 Am. & Eng. Enc. Law, 483–485 and cases cited; Lee v. State, 27 Tex. App. 475, 11 S. W. 483; Tomerlin v. State, — Tex. Crim. Rep. —, 26 S. W. 214; Oxier v. United States, 1 Ind. Terr. 85, 38 S. W. 331; State v. Walters, 7 Wash. 246, 34 Pac. 939, 1098; Ingalls v. State, 48 Wis. 647, 4 N. W. 785; State v. Rosencrans, 9 N. D. 163, 82 N. W. 422; Palmer v. State, 70 Neb. 136, 97 N. W. 235.

The instruction approved in the last case was as follows: "The jury are instructed that the possession of stolen property, recently after the larceny thereof, when unexplained, may be sufficient to warrant the jury in inferring the guilt of the party in whose possession it is found. Whether such inference should be drawn is a fact exclusively for the jury." We commend such instruction as both a correct and an excellent statement of the rule. See, also, in this connection, the very pertinent language of the Minnesota court in the recent case of State v. Hoshaw, 89 Minn. 307, 94 N. W. 873, which we most cordially approve.

Appellant's counsel criticizes the instructions in two other respects

which requires brief notice. He contends that the court erred in defining the term "reasonable doubt," and also in instructing the jury to disregard certain statements and arguments of counsel to the jury. The entire charge is not before us, but merely those fragmentary portions, the correctness of which are challenged. Nor is all the evidence before us. In view of this we cannot say that prejudicial error was committed, when it does not appear that the portions criticized are necessarily erroneous, regardless of any other instructions which might have been given, and regardless of the evidence which may have been introduced. State v. Woods, ante, 156, 139 N. W. 321. However, we deem the instruction relative to the duty of the jury to ignore certain portions of counsel's argument as erroneous under the rule announced in Zilke v. Johnson, 22 N. D. 75, 132 N. W. 640, and the authorities therein cited; but we perceive no serious objection to the other instruction complained of.

For the above reasons the judgment is reversed, and the cause remanded for further proceedings according to law.