## ELCENA SMITH v. THE TOWNSHIP OF SHERWOOD.

*Negligence—Of township in not keeping bridge in repair—Question whether hole in roadway would frighten a horse of ordinary gentleness, for the jury—Evidence of other horses taking fright at same defect is competent to show its continued existence and dangerous character, and its tendency to frighten horses—Thus giving publicity to condition of bridge, and tending to charge township officers with knowledge of such dangerous defect—Leading questions—Objection to testimony on this sole ground—Not entertained unless Court is satisfied beyond doubt that objector has been injured by its admission—Expert testimony—As to liability of hole in bridge to frighten ordinarily gentle horse—Not admissible—This case held to fall clearly within letter and spirit of How. Stat. sec. 1443.*

1. Plaintiff sued defendant for injuries sustained, as she claimed, by her

| 62 | 159, |
| 62 | 233 |
| 64 | 629 |
| 62 | 159 |
| 75 | 508 |
| 62 | 159 |
| 81 | 541 |
| 62 | 159 |
| 82 | 465 |
| 62 | 159 |
| 83 | 176 |
| 62 | 159 |
| 86 | 20 |
| 62 | 159 |
| 92 | 612 |
| 62 | 159 |
| 119 | 682 |
| 62 | 159 |
| 140 | 2360 |
| 62 | 159 |
| 141 | 302n |
| 142 | 2335 |
| 62 | 159 |
| 153 | 2111 |

horse taking fright at a hole in defendant's bridge, and backing off into the stream below. On the trial the court was requested to charge the jury that the "alleged defect in the bridge would not frighten a horse of ordinary gentleness, hence they should find a verdict for the defendant."

*Held*, that the question of *fact* involved in the request was properly submitted to the jury, whose province it was to decide the same.

2. In a suit against a township to recover damages for injuries caused by a defective bridge, under the statute requiring proof by plaintiff that the township had *reasonable* time and opportunity, after knowledge by or notice to its officers that the bridge had become unsafe or unfit for use, to put the same in proper repair, and had not used *reasonable* diligence in so doing,—

*Held*, that evidence of other horses taking fright at the same defect (being a hole in the bridge) was competent to show the existence and dangerous character of the hole for some time, and that it was calculated to frighten horses ; and, as more or less publicity would naturally be given to such occurrences, the evidence also *tended* to charge the township authorities with knowledge of such dangerous defect.

3. Unless satisfied beyond doubt that the admission of leading questions has occasioned injury, the Court will not entertain objections to testimony based solely on that ground.

4. On the trial of a suit to recover damages for injuries occasioned by a defective bridge, a witness who testified that he had driven horses a great deal, and never saw the hole in the bridge which caused the accident, was asked to give his opinion whether the hole in the bridge, describing it, would frighten horses of ordinary gentleness.

*Held*, that the case did not call for expert testimony on this subject.

5. Where a bridge was out of repair, and a hole in the roadway obstructed travel, so that a horse would not pass over it, but became frightened and backed against the railing of the bridge, which, being also defective and rotten, gave way, whereby the driver was injured,—

*Held*, that the case falls clearly within How. Stat. § 1443, as amended by Act No. 214, Laws of 1885, both in the *letter* and the *spirit* of its enactment.

Error to Branch. (Pealer, J.) Argued June 9, 1886. Decided July 1, 1886.

Case. Defendant brings error. Affirmed.

*John B. Shipman* (*F. L. Skeels*, of counsel), for appellant:

Defendant's first request to charge should have been given, as follows:

"The alleged defect in the bridge, consisting of the hole mentioned by the witness, would not frighten a horse of ordinary gentleness, and you will therefore render a verdict for the defendant."

This doctrine is sustained by *Gilbert v. F. & P. M. Ry. Co.*, 51 Mich. 489, if viewed as a matter of law; and, whether regarded as a question of law or fact, under the proof the request should have been given.

If plaintiff's horse, becoming frightened by the hole, ran off the bridge, or as the result of such fright injured plaintiff in any other way, the defect in the bridge cannot be called the *proximate* cause of such injury: *Selleck v. L. S. & M. S. Ry. Co.*, 58 Mich. 195.

This action is based upon How. Stat. §§ 1442–6, and has no standing outside of it; and this statute does not include injuries where the damages are consequential, like those under consideration. The remedy is confined to cases where the want of repair is the *immediate* cause of the injury: *Agnew v. Corunna*, 55 Mich. 430.

*S. B. Kitchel* (*N. P. Loveridge*, of counsel), for plaintiff:

In *Huizega v. Cutler*, 51 Mich. 272, it was held not erroneous to permit witnesses to give opinions as to the dangerous character of the machinery which caused the accident.

The questions objected to as *leading* did not go beyond the discretion of the court: *Driscoll v. People*, 47 Mich. 418; and *this* objection will not generally be noticed by this Court, whether on the record or not: *Lyon v. Chamberlain*, 41 Id. 119.

The question put to the witness Sawins, calling for his opinion whether the hole in the bridge would frighten horses of ordinary gentleness, was properly excluded. It was not a case for *expert* testimony: Rogers on Ex. Testimony, 8, 9; *Norman v. Wells*, 17 Wend. 136; *Lincoln v. Railroad Co.*, 23 Id. 425–32; *Brownell v. People*, 38 Mich. 732.

The answer to the above question was peculiarly within the province of the jury upon *all* the facts in the case: *Hassenyer v. Mich. Cent. R. R. Co.*, 48 Mich. 207.

"When, from the circumstances shown, inferences are to be drawn not certain and uncontrovertible, and as to which persons might differ, it is for the jury to decide:" *Stackus v.*

*Railroad Co.*, 79 N. Y. 464; *Hart v. Hudson River Bridge Co.*, 80 Id. 622; *Payne v. Railroad Co.*, 83 Id. 572; *Lee v. Gas Light Co.*, 98 Id. 115; *Marcott v. M. H. & O. R. R. Co.*, 47 Mich. 1.

MORSE, J. The plaintiff sues for an injury occasioned, as she claims, by a defective bridge under the care and control of the defendant.

The plaintiff and Mrs. Jennie Frazier were in a buggy, drawn by one horse, going to Union City. When they approached the bridge the plaintiff was driving, and, after going part way across the bridge, the horse became frightened at a hole in the planks, or between the planks, of the bridge, backed up some feet from it, against a slab or rail of the bridge, which gave way, and horse, buggy, and the occupants of the carriage were precipitated down the embankment into the stream, injuring the plaintiff.

The bridge was built across a creek or small stream, sometimes called "Riley Mill Stream," and was located between Sherwood and Union City. The approach to the bridge upon the Sherwood side is an embankment, which grows higher as it nears the bridge proper. The wagon track is nearly in the center of the embankment, and there is not room for two wagons to pass. The bridge was about 12 or 15 feet long between the abutments, and 27 feet in all, and 12 or 14 feet wide. Part of the embankment is covered with slabs. The embankment on both sides, including the bridge, was 10 or 12 rods in length. The stream is small and shallow. The embankment formed an unused mill-dam. It was from 10 to 15 feet from the bridge, and the end of the embankment close to the bridge, to the creek and ground beneath.

There had been a crack in the bridge for a year or two, where the edge of a plank had split or worn off, which kept gradually growing wider. At the time of the accident it was about two feet in length, and from three to five and one-half inches in width. A board had been nailed over it at one time, but had been misplaced or removed. The hole was large enough for the foot of a horse " to go through if

he stepped just right." It was about two-thirds of the way across the bridge, in going towards Union City.

It was claimed by the plaintiff that when the horse backed up at sight of this hole the buggy struck the railing at the Sherwood end of the bridge; that the railing was composed of a slab nailed to or upon the posts, and old and rotten. The defendant claimed that the buggy did not strike the rail of the bridge, but that the horse backed clean off the bridge, and went over the embankment.

After the injury to plaintiff a new bridge was built, and at the trial the testimony of the character, condition, and dimensions of the bridge, and its surroundings, was quite conflicting, and resting in the memory of witnesses more or less biased or interested. No accurate measurements were taken of the old bridge, or the hole in it.

There was also, upon the trial, a controversy as to the gentleness of the horse.

The plaintiff recovered $725 damages in the court below.

The principal objection against the judgment is that, upon the undisputed facts in this case as to the size and character of this hole, and its situation in the bridge, the circuit judge should have directed a verdict for the defendant.

The counsel for the defendant insist that, as a matter of common knowledge, of which the court should take notice, no horse ordinarily gentle would pay more than a passing attention to such a hole in the bridge.

We are cited to the case of *Gilbert v. Flint & P. M. Ry. Co.*, 51 Mich. 489, as sustaining their position, and furnishing a precedent for this Court to declare, as a matter of law, that this hole would not frighten an ordinarily gentle horse.

The case at bar must be determined upon its own facts and circumstances. There is not similarity enough between a freight car standing near the road, and a hole in a bridge, to authorize the government of this case by the decision in the Gilbert case; and, if there were I, for one, should not feel disposed to apply the principle there established, for many reasons not necessary to be here stated.

The case before us was tried by a jury, summoned from

the body of the people of Branch county, and presumably composed of farmers and business men, familiar with the every-day use of horses, and who are passing over bridges and along highways, in carriages and wagons drawn by horses, fifty times to any once that any member of this Court so passes.

The counsel urge that we are bound, as a matter of common knowledge, familiarly and certainly known to us to exist among the people, to decide a question of fact in opposition to the finding of twelve men of vaster and more varied experience, and with greater opportunities of knowledge, than we possess, upon the subject to be determined. If we hold, as a matter of law, that this hole would not frighten an ordinarily gentle horse, we trench upon the province of the jury, and undertake to establish a fact, as the basis of our opinion, which twelve other men, who ought to know better than we, have declared not to be a fact.

In order to make this a question of law, a fact must first be determined by us, to wit, the existence of this common knowledge; and yet a jury of twelve men, drawn at random and by lot from the average of our best citizens, with ample experience, and sworn to be disinterested, have by their verdict shown that they are all wanting in this common knowledge, and ignorant of its existence among others, which we must declare to be common to and pervading the community where they live before we can rule as requested by defendant's counsel.

The court below properly instructed the jury in this regard. He told them that if they found that the hole was not such a defect as was calculated to frighten horses ordinarily road-worthy, and the township was not in fault in reference to that, or to blame for the fright of the horse in the first instance, then the plaintiff could not recover on account of the defective rail or post.

The fact whether or not this hole would frighten an ordinarily gentle horse was submitted to the jury, whose province it was to determine facts. There was no law involved in it. It was to be determined by the knowledge, observa-

tion, and experience of twelve men; and no one man, however learned in the law, is authorized to take a question of this kind from them and decide it himself.

It is also urged as error that the court upon the trial permitted the plaintiff to prove particular instances of other horses shying at this hole in the bridge. It is claimed that this was not competent, because its admission would materially and necessarily open the door to collateral issues as to the manner of driving, the kind and disposition of the horses, and the skill of the drivers; as without the settlement of such questions by evidence, the testimony would have no relevancy to the main issue, and would, as a matter of course, tend to mislead the jury.

This action is brought against the township under a statute which provides that it must be shown that the township had reasonable time and opportunity, after knowledge by or notice to such township that such bridge had become unsafe or unfit for travel, to put the same in the proper condition for use, and had not used reasonable diligence therein after such knowledge or notice (How. Stat. §1443, as amended by Sess. Laws 1885, § 2, Act No. 214).[1]

The evidence was therefore competent to show the existence of the defect for some time, and that it was calculated to frighten horses. It tended to show the dangerous character of the hole in the bridge, and, as more or less publicity would naturally be given to such occurrences, it also tended to show that knowledge of such dangerous character was brought to the attention of the township authorities: *District of Columbia v. Arms*, 2 Sup. Ct. Rep. 840; *Quinlan v. City of Utica*, 11 Hun, 217; *City of Chicago v. Powers*, 42 Ill. 169; *Augusta v. Hafers*, 61 Ga. 48; *Darling v. Westmoreland*, 52 N. H. 401; *Hill v. Portland & R. Ry. Co.*, 55 Me. 439; *Kent v. Lincoln*, 32 Vt. 591; *City of Delphi v. Lowery*, 74 Ind. 520.

Various objections were made to the introduction of evi-

---

[1] Act of 1879, as amended in 1885, repealed by Act 264 Laws of 1887. See *Stebbins v. Keene*, 60 Mich. 214; *Carver v. Detroit & Saline Plank Road Company*, 61 Id. 589 (note).

dence, several on the ground alone that the questions were leading. We cannot see that the so-called leading questions could have done any harm to defendant; and, unless satisfied beyond doubt that the admission of leading questions has occasioned injury, this Court will not entertain objections based only on that ground : *Lyon v. Chamberlain*, 41 Mich. 119. Errors of form only, not affecting the merits, should be disregarded.

The witness Sawins was not permitted to answer the following question put by defendant's counsel :

"*Question.* What do you say about a hole in that bridge twenty inches long, and three inches wide at one end, swelling up to about four inches wide, and then tapering off to two inches, frightening horses of ordinary gentleness ?"

It was properly rejected. The case did not call for any expert evidence as to this subject. The only knowledge, special or otherwise, that he was shown to possess, was that he—

" Had driven horses a great deal ever since he was old enough to drive a horse, and never saw the hole in the bridge."

His knowledge did not exceed that of the jury who were trying the case.

The question propounded to the physicians was proper. The only objection made is that it coupled the fact of the plaintiff's falling off from the bridge, while riding in a buggy, a distance of 12 or 14 feet, with the other facts disclosed by their examination of the injuries, as a basis for the hypothetical question as to the probable duration of her injuries. As it was admitted that she did fall that distance, we fail to discover what harm was done to the defendant by the form of the question.

A witness for the defendant volunteered the statement, while testifying, that Smith, the husband of plaintiff, who owned the horse she was driving at the time of the accident, said, at one time when the horse was frightened in crossing a sluiceway, and witness was present, that the horse " had

always been afraid of bridges since he got through the Trumble bridge."

On motion of plaintiff's counsel this remark was stricken from the case. Exception was taken, and error is assigned upon this action of the circuit judge.

There was no error in striking out and excluding this statement. It could not bind the plaintiff because Smith was her husband, nor by reason of his ownership of the horse. It was purely hearsay and incompetent. Smith was not a witness, nor present on the trial.

M. E. Sawins, a witness for defendant, testified, upon cross-examination, without objection, that he owned property in Sherwood, and, in company with his father, was running a bank there; that he presumed he would have considerable of the judgment to pay; and that he presented the matter to the voters of the township, and advised them to settle. He was then asked:

" *Question.* Did you not advise them, from time to time since, to pay something ?"

The question was objected to as immaterial, and the objection overruled.

" *Answer.* Only once."

The question was immaterial; but we do not think, as argued by defendant's counsel, that the jury used this evidence against the township, as tending to establish a legal liability on its part to pay plaintiff something for her injuries. He also testified that he presented the claim for Mrs. Smith, and advised its payment, because she requested him to do so, and not because he believed it to be a legitimate claim against the township; and that he was deputy township clerk at the time.

It is evident that the fact of his advising payment, under these circumstances, did not influence the action of the jury, and there was no reason why it should.

The court instructed the jury that if the hole was such a defect as would frighten an ordinarily gentle horse, and that the plaintiff's horse was frightened thereby, and became un-

manageable, and that this caused the injury, it would make no difference whether the plaintiff's horse and buggy went over the side of the span between the abutments, near the corner, or whether it was backed off the end, and then over the rail near the corner, and down the side of the abutment; whether it was just north of the corner, or just south of the corner, or just at the corner, if the township was in fault and caused the injury, or the fright of the horse in the first instance which caused him to become unmanageable.

It is objected to this:

1. That it gave the jury to understand that it made no difference where the horse backed off, without confining it to the allegation in the declaration.

2. That it was wrong, as the hole in the bridge cannot be considered as the proximate cause of the injury.

The declaration alleged that the horse backed against the side railing of the bridge, and the proof was sufficiently within this allegation, whether it was the railing between the abutments or the slab railing beyond the abutments.

It is also urged, under the second objection to this portion of the charge, that the statute does not include injuries where the damages are consequential; that it is confined to cases where the want of repair is the immediate cause of the injury; in other words, the injury must, in this case, have resulted from the horse stepping into this hole, and not from any fright occasioned by it.

We are cited to the cases of *Selleck v. Lake Shore & M. S. Ry. Co.*, 58 Mich. 195, and *Agnew v. Corunna*, 55 Id. 430, heretofore decided in this Court, to support said second objection.

The first case does not seem to have the remotest application to any principle of law embodied in the charge. It was held in that case that the fright and running away of the horses could not have flowed from the detention of the team by the cars blockading the passage-way, as a proximate cause. The plaintiff had averred that while thus detained his horses were frightened by the negligent escape of steam, but this was disproved on the trial. He had not attributed

his injury to the illegal detention.   If the proofs had shown that his horses were frightened by the negligent or unlawful act of the company's servants or employes, in allowing steam to escape, and the decision, as it is, had been based upon that fact, it would have some application to the case at bar.   As it is, however, it has none.

I do not understand the case of *Agnew v. Corunna* to sustain the position of defendant's counsel as applied to this case.   It may be that the opinion in that case holds, substantially, that "the statute is not aimed at indirect and remote mischiefs, but to those which follow from a direct injury caused by a want of repair;" and that the law relates to things which obstruct the passage; and that when the damage is consequential, and not on the effect of a want of repair, but on fright caused to a horse, which ran away and damaged the vehicle or persons, the plaintiff does not come within the statute, and cannot recover.   But this is not such a case.   In the Agnew case the fright was caused by a stone outside of the traveled track of the highway; but in the case before us the bridge was out of repair; the hole obstructed travel; the horse would not pass over it, but became frightened, and backed against the railing of the bridge, which, being also defective and rotten, gave way, and caused the injury.   It comes clearly within the statute, both in the letter and spirit of its enactment.

We find no error in the proceedings, and the judgment will be affirmed, with costs.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J.   In this case the accident was the result of a dangerous defect in the roadway itself, which made it unsafe for passage.   A horse, suddenly confronted by a danger beneath his feet, will seldom stop short, without either backing or in some other way moving from the place of peril.

Most intelligent animals are cautious in crossing a rickety wooden bridge, and what happened here is what might

fairly be expected to happen where a horse finds his way stopped by a hole he is afraid to cross. It is a direct consequence of the bad condition of the floor of the bridge, and is not the case of fright from some object which forms no part of the roadway and does not impede passage over it. I have no doubt of the correctness of the verdict for this reason, and see no error in the rulings below, as applied to this state of facts, which is all we need consider.