Viola RETTLER, Plaintiff and Respondent,

v.

John EBRECK, Defendant and Appellant.

Irene BIGLEY, Plaintiff and Respondent,

v.

John EBRECK, Defendant and Appellant.

Nos. 7401, 7402.

Supreme Court of North Dakota.

June 30, 1955.

Rehearing Denied Aug. 26, 1955.

Quentin N. Burdick, Fargo, for defendant and appellant.

E. A. Tannas, Crosby, Duffy & Haugland, Devils Lake, for plaintiffs and respondents.

BURKE, Chief Justice.

These actions were instituted for the purpose of recovering for damages suffered by the plaintiffs in a collision between an automobile, owned and operated by the defendant, and a caterpillar tractor. At the time of the collision plaintiffs were passengers in defendant's car and their complaints alleged that their injuries were proximately caused by the gross negligence of the defendant. In his answers the defendant denied any negligence on his part and alleged contributory negligence on the part of the plaintiffs. The actions were consolidated for purposes of trial and the trial resulted in verdicts in favor of the plaintiffs. From the judgments entered upon the verdicts and from orders denying motions for judgment notwithstanding the verdict or in the alternative for a new trial in each case, the defendant has appealed.

The first specification of error to be considered is the assignment that the evidence is insufficient to sustain the verdict of the jury. This assignment is twofold; first that there is no evidence of gross negligence on the part of the defendant and, second; that the evidence shows contributory negligence on the part of the plaintiffs as a matter of law.

On the night they were injured the plaintiffs, in company with the defendant and a Howard Crocker left Crosby to drive by automobile to Fortuna, a distance of about 23 miles. The time of departure was between 1:15 and 1:30 A.M. Defendant had provided a pint of whiskey and some coca-cola to take along on the trip. On the way to Fortuna, each of the men had one drink of whiskey mixed with coca-cola. On the way to Fortuna, defendant drove at a speed of 45 to 50 miles an hour. On the way they passed a caterpillar tractor moving towards Crosby at a slow rate of speed. Upon arrival at Fortuna Crocker and the plaintiff Viola Rettler, left the car and entered a trailer house to visit a friend of Crocker's. They took the whiskey with them and remained in the trailer house for about 45 minutes. In the meantime, the defendant and Irene Bigley remained in the car. While there the defendant made erotic proposals to Irene which were rejected. According to Irene, defendant became angry and sullen and when Crocker and Viola came back to the car, started back towards Crosby at a high rate of speed. Irene stated that the speed on the return trip was much faster than on the trip to Fortuna. This statement is denied by the defendant. The road from Fortuna to Crosby has a graveled surface about 30 feet wide. For the first 3 or 4 miles east of Fortuna, the road is quite rough and while traversing this part of the road Crocker asked the defendant to "Take it

easy, we have lots of time." According to Irene, the defendant paid no attention to this request but "kept right on going". In this testimony she is corroborated by Viola Rettler.

At a place, about two miles west of Crosby, defendant saw a single white light on the road at a distance of about a quarter of a mile ahead of him. Upon seeing it he remarked, "Here comes a one-eyed driver", indicating that he judged the light to be a single headlight on an approaching car. The light was a single rear light upon the caterpillar tractor that defendant had passed on his way to Fortuna. The light was over the right hand track of the tractor and it was tipped so that its beam slanted downward toward the road. This tractor was proceeding in the same direction as the defendant and it was traveling, as was defendant, in the right or south lane of the highway. Neither of the plaintiffs remembered anything about the accident or anything else that occurred after defendant said "Here comes a one-eyed guy." Defendant said that upon seeing the light ahead of him, he immediately started to slow down and when he saw the tractor in the lane ahead of him "slammed on his brakes" but he was unable to stop in time to avoid a collision. Defendant's own statement is that the tractor was but fifty feet ahead of him when he first applied the brakes. There was no traffic at the time in the north lane of the highway and defendant offered no explanation as to why he did not attempt to pass the tractor in that lane. As a result of the collision defendant's car suffered major damage and its occupants were severely injured.

Since this is a guest case the first question is whether the evidence in the case permits a reasonable inference of gross negligence or willful misconduct. Section 39–1503 NDRC 1943.

██ Questions of negligence are questions of fact for the jury unless the evidence is such that only one conclusion can be deduced therefrom. McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771;

Olson v. Kem Temple, 78 N.D. 263, 49 N.W. 2d 99. " ' "Gross negligence" is, to all intents and purposes, no care at all. It is the omission of the care which even the most inattentive and thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically willful in its nature.' " Rubbelke v. Jacobsen, 66 N.D. 720, 722, 268 N.W. 675, 676; Erickson v. Foley, 65 N.D. 737, 262 N.W. 177.

Here the testimony is in dispute. The plaintiffs say that defendant left Fortuna in a pique and drove at a high rate of speed, going much faster than he had driven on the way to Fortuna. They say that he was asked to "take it easy" but that he paid no attention to the request. This testimony if believed, and its credibility was for the jury, would permit an inference that the acts of the defendant were willful in character. Defendant first saw the white light on the tractor when it was a quarter of a mile away. There seems to be no question but that at first he was confused. His remark, "Here comes a one-eyed guy" indicated that his first impression was that a car with a single headlight was approaching. He said that upon seeing this light he started to slow down. By his own admission, however, he did not apply his brakes until he was within fifty feet of the tractor, when he said he realized for the first time that the vehicle ahead was in his lane of traffic. Defendant's car struck the tractor with sufficient force to telescope its front end to the extent that the front seat had to be moved backwards in order to extricate the plaintiff, Irene Bigley, from the wreck. There are some things in connection with this accident that remain unexplained.

Why did defendant not realize the vehicle ahead was in his lane until he was within fifty feet of it? The white light on the tractor was covered with frosted or corrugated glass. It was five feet above the ground and was set so that the beam from the light focused on the ground at a point twenty feet behind the tractor. It appears therefore that the only characteris-

tic that this light had in common with an automobile headlight was its color. The light was over the right track of the tractor, or toward the right hand side of the lane in which both vehicles were traveling. The highway was straight. Defendant did not complain about his own headlights. Presumably they conformed to statutory requirements and would render clearly discernable an object two hundred feet ahead. Section 39–1103 NDRC 1943. Why did not defendant make an attempt to avoid the collision by turning into the left lane of the highway which was clear of traffic, instead of merely "slamming on his brakes?" When the defendant first concluded that a car with a single headlight was approaching, he should have realized that a hazard lay ahead of him and we are satisfied that reasonable men could have drawn the inference from all the evidence that defendant by the exercise of slight care, after he first saw the light on the tractor, could have avoided the accident, either by stopping or by passing, or in other words that the collision and resulting damage were proximately caused by the failure to use slight care or by gross negligence.

■ Defendant's contention that the evidence shows contributory negligence on the part of the plaintiffs, as a matter of law, is based upon the fact that they made no protest against defendant's conduct and made no request to leave the car. In support of this contention defendant cites the case of Eddy v. Wells, 59 N.D. 663, 231 N.W. 785. In that case this court held that a guest passenger in an automobile must exercise reasonable care to avoid injury to himself and that he has a duty to protest if he knows the car in which he is riding is being driven at an unreasonable speed. This rule is not a strict rule which in every case makes failure to protest against excessive speed contributory negligence as a matter of law. It is common knowledge that, where a driver is "skylarking" or angry or merely resentful of what is commonly called "backseat driving", a protest may aggravate the danger

rather than remove it. Here there is testimony that the defendant was angry and we are satisfied that it was for the jury to determine whether in the circumstances it was negligence for the plaintiffs to fail to add their protests to the one that had been made by Howard Crocker.

Since the evidence in the case would permit a reasonable inference of gross negligence upon the part of the defendant and the absence of contributory negligence on the part of the plaintiffs, the decision of the trial court denying the motion for judgment notwithstanding the verdict was correct.

■■ Defendant has specified as error certain rulings of the court made during the trial of the case. The first of these relates to the admission of certain testimony of the witness Duffy. This witness, a highway patrolman was permitted to testify, over objection, that speed was a factor in the accident. The admission of this testimony was error. In Dolan v. O'Rourke, 56 N.D. 416, 421, 217 N.W. 666, 667, we quoted with approval from 3 Jones, Evidence, p. 1243, sec. 1243 as follows:

" 'No better or more constant application of the general rule excluding opinions can be found than in negligence cases. It has been repeatedly held that, where the ultimate fact for the jury is whether the conduct of a certain person was careless, reckless, or negligent, it is not competent for a witness to express an opinion, conclusions, or judgment thereon. It is the province of the jury to determine the ultimate fact whether conduct was careless, reckless, or negligent, and this right may not be encroached upon by witnesses. It is the function of the witness to state evidentiary facts and the function of the jury to draw such conclusions as the facts warrant.' " See also Kist v. Kist, 62 N.D. 408, 243 N.W. 820.

It is also specified that certain testimony received and testimony read into the

record in an attempt to impeach the defendant was erroneously admitted.. With respect to this incident the record shows the following:

"Q. You were a witness at this trial that occurred here about July 24, 1951, weren't you? A. Yes.

"Q. And at that time, these two plaintiffs were witnesses in that case? A. Yes.

"Q. And you sat here in court and heard them testify? A. Yes.

"Q. And then you took the stand and testified? A. Yes.

\* \* \* \* \* \*

"Q. And at that time, \* \* \* were you asked the following question and make the following answer: 'Question: Now, you heard the testimony of Viola Rettler and Irene Bigley yesterday. Was their testimony substantially correct? Answer: Yes sir. Did you give that answer to that question at that time?' A. Yes.

"Quentin Burdick: Just a minute. I am going to object to that as improper impeachment. I object to that as an improper impeaching question.

"The Court: Overruled.

"Q. You say you gave the answer to that question? \* \* \* A. Yes sir. \* \* \*

"Q. Now, did it (the statement that the testimony was substantially true) also cover this testimony given by Irene at that time?

"Q. Do you remember anything unusual about John's driving on the way home? A. Well, he was going fast, I know that.

"Q. Well, what do you mean by that? A. Well—

"Q. Was he going any faster coming home than he was going over? A. Yes, I think so.

"Q. Well, how much faster do you think he was going? A. Oh, I'd say 20 miles faster, anyway. It seems that much.

"Quentin Burdick: If your Honor please, I am going to object to this improper impeaching matter, and the basic question was a general question and not specific. \* \* \*

"The Court: Objection overruled.

"Q. Was that part of the testimony you heard here in court and later said was substantially true? A. Part of the testimony, yes."

As we view it this testimony was subject to two legal infirmities. In the first place a statement that the whole testimony of a witness was substantially correct does not vouch for all of the testimony of the witness. It merely means that "in the main" the testimony was true, not that it was wholly or completely so. South Penn. Oil Co. v. Knox, 68 W.Va. 362, 69 S.E. 1020; Gibson v. Glos, 271 Ill. 368, 111 N.E. 123. This being so, any single statement made by the defendant as a witness in the instant case which conflicts with statements made by the plaintiffs at a previous trial cannot be said to contradict directly his prior testimony that the statements made by plaintiffs at the previous trial were substantially correct. A prior statement of a witness in order to be provable for the purpose of impeachment, must be, in some degree, contradictory or inconsistent with his testimony on direct examination. State v. Schonberg, 24 N.D. 532, 140 N.W. 105. In the second place the procedure followed brought before the jury, plaintiff, Irene Bigley's testimony given on a previous trial that defendant drove 20 miles an hour faster on the way back from Fortuna than he had on the way over. In the instant case plaintiffs' attorney had sought to elicit the same testimony from Irene Bigley. The trial court, however, sustained an objection to the foundation for this testimony holding, and we think properly so, that Irene Bigley was not qualified to

make an estimate of speed in miles per hour. The procedure followed thus placed incompetent testimony before the jury. We are agreed therefore that defendant's specification of error in this regard is sustained by the record.

Defendant has also specified as error one of the instructions given by the trial court. The instruction is as follows:

"Members of the jury, you are hereby instructed that there is no evidence of intoxication in this case, and you are to consider only whether at the time and place alleged in the Complaint, the defendant was guilty of gross negligence, as defined in these instructions. However the jury have a right to take into consideration any evidence of the drinking of intoxicating liquor by the defendant before the collision in determining his state of mind and whether or not he was guilty of gross negligence."

We agree with the trial judge in his statement that there was no evidence of intoxication in this case. There was some testimony that defendant was "feeling good" about four o'clock in the afternoon of the day preceding the accident. The defendant stated that he had had two drinks of whiskey at a bar in Crosby that afternoon. Defendant worked as a bartender at the Legion Club in Crosby from 7:00 P.M. until a little after 1:00 A.M. He stated that during that time he had nothing to drink. No one testified that he did have anything to drink during that time nor did anyone testify as to any behavior on his part from which drinking or intoxication could be reasonably inferred. The plaintiffs who had the best opportunity of observing the defendant before they started on the trip to Fortuna did not so testify. On the way to Fortuna defendant shared one drink of whiskey with Crocker. This was as least an hour and probably an hour and a half before the accident. The testimony that defendant had but a part of one drink on the trip to Fortuna is not contradicted by either of the plaintiffs. Viola Rettler who was with the defendant at all times testified that he was otherwise engaged. No one testified that the defendant showed any signs of being under the influence of intoxicating liquor when he was taken to the hospital immediately after the accident. The only evidence in the case therefore with respect to the drinking of intoxicating liquor by the defendant is that he had two drinks or enough so that he "was feeling good" at about four o'clock in the afternoon or about twelve hours before the accident and that he shared a single drink with Crocker about an hour and a half before the accident. We are satisfied that this evidence was not sufficient to raise an issue of intoxication nor to submit to the jury that they could consider this evidence of drinking upon the issue of negligence.

Since we cannot say that the evidence in this case demonstrates that defendant was guilty of gross negligence as a matter of law, we must hold that the combined effect of the errors committed upon the trial of the cases was prejudicial to the defendant. New trials must therefore be granted. Certain other errors were specified upon these appeals but since the questions they present are not likely to arise upon a retrial we have not considered them in this opinion.

The judgments in these cases are therefore reversed and new trials granted.

GRIMSON, MORRIS and SATHRE, JJ., concur.

JOHNSON, J., did not participate.