WASHBURN v. LUCAS.

1. AUTOMOBILES — INTERSECTIONS — CONTRIBUTORY NEGLIGENCE — EVIDENCE.

Evidence presented in action arising from collision between plaintiff's westbound station wagon and defendant's southbound station wagon at midafternoon on a rainy, drizzly day early in June at an uncontrolled intersection of city streets *held,* sufficient to present issue of contributory negligence to jury.

2. SAME—INTERSECTION—INSTRUCTIONS.

Instruction given in case arising from collision between plaintiff's westbound station wagon and defendant's southbound station wagon in northwest quadrant of uncontrolled intersection of city streets at midafternoon of a rainy, drizzly day early in June which unqualifiedly assumed disputed fact that plaintiff

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 1005, 1013.
[2] 8 Am Jur 2d, Automobiles and Highway Traffic § 1034.
[3] 20 Am Jur, Evidence §§ 817, 818.
 Admissibility of opinion evidence as to the cause of an accident or occurrence. 38 ALR2d 13.
[4] 5 Am Jur 2d, Appeal and Error § 553.
[5] 4 Am Jur 2d, Appeal and Error § 491 *et seq.*

was nearest to, entering, or within intersection as defendant driver rapidly accelerated beyond the speed limit, *held*, reversibly erroneous.

3. EVIDENCE—NEGLIGENCE—OPINION AS TO CAUSATION.

Opinions of causation in negligence cases whether offered by experts or lay witnesses should be excluded, where the subject matter of the inquiry is of such a character that it may be presumed to lie within the ordinary experience of all men of common education.

4. APPEAL AND ERROR—OBJECTIONS—OPINION TESTIMONY OF POLICE OFFICER.

Admissibility of opinion testimony of police officer who did not witness collision at intersection but did investigate the accident was not reversible error, where no objection had been made to such testimony.

5. SAME—NOTICE OF ERROR.

The Supreme Court has the power to notice a plain error though it is not assigned or specified.

DETHMERS, O'HARA, and ADAMS, JJ., dissenting.

Appeal from St. Clair; Streeter (Halford I.), J. Submitted May 8, 1964. (Calendar No. 79, Docket No. 50,219.) Decided October 6, 1964. Rehearing denied November 2, 1964.

Case by Wycliffe Washburn against Hubert V. Lucas, doing business as Lucas Funeral Home, for personal injuries sustained in automobile collision June 1, 1961. Verdict and judgment for plaintiff. Defendant appeals. Reversed and remanded for new trial.

*Davidson, Osborn & Staiger*, for plaintiff.

*Touma, Watson, Andresen & Kelly*, for defendant.

ADAMS, J. (*dissenting*). This case arose out of an intersection collision. Plaintiff was awarded a jury verdict of $50,000. Defendant appeals from entry of judgment on the verdict and from orders denying his motions for judgment notwithstanding the verdict and for new trial.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law on the theory that plaintiff entered an uncontrolled intersection without reducing his speed or taking steps to avoid being struck by defendant's vehicle approaching from his right at approximately the same speed. It was not incumbent upon the trial judge to adopt that testimony most favorable to the defendant upon motion for a judgment notwithstanding the verdict of the jury because all of the witnesses were produced by the plaintiff, but, rather, to view the evidence in a light most favorable to the plaintiff. See *Anderson* v. *Gene Deming Motor Sales, Inc.,* 371 Mich 223, and cases cited therein at pages 229, 230.

A collision occurred at about 3 p.m., on June 1, 1961, a rainy, drizzly day, at an uncontrolled intersection in Port Huron. Plaintiff, driving a fire-engine-red 1959 Nash Rambler station wagon, was proceeding west on Pine street. Defendant's 1961 Ford station wagon was being driven south on 18th street by Colgan, an employee. The cars collided in the northwest quadrant of the intersection. Plaintiff's car was struck on the right side with the point of greatest damage on the right front door at the pillar post, 51 inches from the front bumper. The car body was pushed in 20-1/2 inches. The motor was ripped free from the left rear motor mount.

Just before the accident, a Mrs. Pochodylo, whose home was located on the southwest corner of the intersection, went into a room on the northeast corner of her house and pulled back the draperies of a corner window. To the north, she saw defendant's vehicle coming south; and, to the east, she saw plaintiff's automobile proceeding west. Both cars seemed about the same distance from the intersection and were in their own lanes, traveling at about the same rate of speed. She saw the cars

crash but was unable to testify as to which one came to the intersection first or which one came into the intersection first. Mrs. Pochodylo continued to watch the cars from the moment she saw them because she knew they were going to crash.

Harold V. Zimmer, residing on the southeast corner of Pine and 18th streets, moving about in his house, saw plaintiff's car about 80 feet from the intersection and defendant's car opposite an alley that intersected 18th street. Both cars were about the same distance away from the intersection. He first saw the defendant's car while standing at a fireplace in the living room, then the plaintiff's car through narrow kitchen windows between cupboards, and finally both cars through a window in the dining area. He did not step over to a window to see if they were going to collide. He did not see the impact.

Immediately after the accident, witnesses Pochodylo and Zimmer were interviewed by Officer Leibler. He testified, under cross-examination, that they could tell him very little about it.

Colgan, the driver of defendant's automobile, left his employer's place of business and shortly turned onto 18th street. He testified he could make the turn at 20 miles per hour. As he proceeded south, somewhere in the middle of the block, sticks were lying in his lane. He turned toward the curb to go around them, slowing down to 20 miles an hour. Afterward he coasted a distance and then stepped on the gas, accelerating to approximately 25 miles an hour. He looked both ways and proceeded into the intersection. The next thing he remembered was sitting up on a lawn.

As bearing on the extent of any observation Colgan made of what was there to be seen, although he says he looked both ways, not only did he fail to see plaintiff's car coming from the east but also failed to see a Mrs. McGregor's car coming from

the west on Pine street. Mrs. McGregor was about a half a block away from the intersection at the time of the impact.

Plaintiff Washburn, suffering from traumatic amnesia, testified that the last thing he could remember was when he was in his home before the accident occurred.

State Police Trooper Wade, who had served approximately 15 years as a trooper policing some 600 or 700 accidents, and who had gone to school a number of times each year for refresher courses on his work, testified that 70 to 75% of his work is traffic accidents and traffic enforcement. He made a detailed study of the automobiles and the intersection. It was his opinion that, at the time of impact, the front wheels of the Washburn vehicle were just about on a direct line with the west curb of the north and south street and the front of the car was approximately a foot and a half beyond the curb to the west; that plaintiff's car entered the intersection first by 25 feet; and that the defendant's car had a minimum speed of 30 miles an hour with a range of not to exceed 45 miles per hour. (The legal rate of speed was 25 miles per hour.) Under cross-examination Trooper Wade testified:

"From my investigation and where his car was struck I believe he [plaintiff] assumed that he had the right of the intersection inasmuch as he entered it first, possibly assuming that the Lucas car was going to yield the right-of-way to him.

"Q. Well, you are speculating there as to what he saw or did not see, is that it?

"A. Not speculating to what he saw; I am telling you that he went into the intersection and had every right to assume that the intersection was his."

Trooper Wade, in justifying his conclusion stated that the direction of plaintiff's car was changed

greatly from its course, to the extent almost of a right angle, which indicated to him the application of a great deal of force.

It was proper in this case for the jury to consider not only the testimony of the eyewitnesses, but the physical facts, the opinion evidence of a properly qualified expert, and the presumption of due care to which plaintiff was entitled, unless rebutted by other evidence, under the circumstances of his loss of memory. *Breker* v. *Rosema,* 301 Mich 685 (141 ALR 867). The evidence was sufficient for the jury to conclude that plaintiff was not contributorily negligent. *Anderson* v. *Gene Deming Motor Sales, Inc., supra.*

With regard to the claimed error of the judge in his charge to the jury, Justice SOURIS indicates that the words, "if you find," would have cured the purported error had they been used by the trial judge at the beginning of the last sentence of the second quoted paragraph of the charge. I do not believe it was essential that the judge use these words at this point since he had already made it abundantly clear that the jury must make a finding of fact before it could reach a given result. The words, "if you find," were used 6 times before the judge gave the sentence that is considered to be objectionable (the last time in the sentence immediately preceding it) and the jury was fully charged as to its responsibility in weighing the evidence. Under the well-known rule that a charge to the jury must be considered in its entirety, I do not find error.

We are not called upon at this time to pass upon the admissibility of opinion testimony that may be offered by an expert, it being conceded that no objection was made to the testimony of Trooper Wade and that, consequently, there was no reversible error.

Justice Souris, in his opinion, deals with the propriety of Trooper Wade's testimony. The validity of his advice to the trial courts depends upon agreement that "the subject matter of the inquiry is of such character that it may be presumed to lie within the ordinary experience of all men of common education."* The converse of this proposition stated in *Detroit T. & I. R. Co.* v. *Banning* (CCA 6), 173 F2d 752, 756, certiorari denied 338 US 815 (70 S Ct 54, 57, 94 L ed 493), is:

"The general rule permits a witness who is experienced in technical matters and qualified to do so, to give his opinion in a matter which is not one of common knowledge, although it involves an ultimate fact to be finally decided by the jury."

To the same effect see *Sykes* v. *Village of Portland,* 193 Mich 86; *Winchester* v. *Chabut,* 321 Mich 114; *Buehler* v. *Beadia,* 343 Mich 692. For a recent discussion of the modern trend toward the admission of opinion evidence, even though it bears on an ultimate issue see 32 CJS, Evidence, § 446(b). It would seem to me that any consideration of this subject might more appropriately be reserved for an occasion when the question is before this Court.

The order of the trial judge denying motion for judgment notwithstanding the verdict of the jury should be affirmed. Costs to appellee.

O'Hara, J. (*dissenting*). I agree with the result sought by Mr. Justice Adams but I record an observation which I feel is indicated. The testimony of Trooper Wade quoted by Justice Adams was elicited on cross-examination, and for this reason objection thereto by defendant's examining counsel was possible only upon the ground of nonresponsivity. Such

---

* From 20 Am Jur, Evidence, § 817, p 687, quoted in *Kelso* v. *Independent Tank Co.* (Okla), 348 P2d 855, 857.—Reporter.

objection was apparently not made and counsel does not claim error, here on appeal, in the admission of such testimony. However, I would like to make clear that in my view the testimony was highly prejudicial and far exceeded the limit of opinion testimony even by an "expert." Conclusions from physical facts are one thing; conclusions of law, *i.e.* "he had the right of the intersection" are quite another. So too is the testimony as to the state of mind of 1 driver, *viz.*, "possibly *assuming* that the Lucas car was going to yield the right-of-way to him."

The impact of such testimony upon a jury from one clothed in the objectivity of a public protector, such as a State police officer, is incalculable. To protect parties litigant from unlimited editorializing by investigating officers, it should be understood that the quoted testimony of Trooper Wade, had it been offered on direct examination, would have been inadmissible.

DETHMERS, J., concurred with O'HARA, J.

SOURIS, J. The sole questions posed for review are (a) whether plaintiff was guilty of contributory negligence as a matter of law, thus calling for grant of defendant's successive motions for directed verdict and judgment notwithstanding verdict, and (b) whether the trial judge erred in instructing the jury. The portions of the charge brought to appellate scrutiny read, in continuous context, as follows:

"I charge you, ladies and gentlemen, that as Mr. Washburn approached the intersection he was under certain legal duties and obligations regarding the operation of his automobile. He was required under the law (1) to look for traffic approaching from his right on 18th street; (2) to see what traffic was

approaching within such·distance as to constitute a hazard to his safety; (3) to keep such approaching traffic under observation; (4) to form an opinion as to the speed of such approaching traffic and to determine whether or not he could proceed through the intersection safely; (5) to use such care and caution regarding his own safety as would be employed by a reasonably prudent person under the same circumstances. If you find by a preponderance of the evidence that Mr. Washburn failed in the performance of 1 or more of these duties, such conduct on his part constitutes negligence and if you find that such negligence was a proximate cause of the accident and injuries suffered by him your verdict then must be for the defendant Lucas for no cause for action regardless of whether or not you find negligence on the part of the defendant. I charge you, however, that when a driver reaches an intersection in advance of another under such conditions of relative distance and speed as would induce a reasonably prudent man to believe he can cross in safety he is not guilty of negligence in proceeding and may initially assume that the other will use due care and accord him his legal rights by yielding the right-of-way regardless of whether the other driver is approaching from his right or his left. * * *

"I further instruct you that if you find that the Lucas car swerved or cut over to the curb, slowed down and then accelerated prior to entering the intersection, and that this action was such as would induce a reasonably prudent man to believe that the Lucas car was intending to stop or yield the right-of-way and that he could cross 18th street in safety, Mr. Washburn is not guilty of contributory negligence in proceeding. Mr. Washburn had the right to assume, if he was nearest to the intersection, or entering it, or within the intersection, that the one who is farthest away will use due care and will accord to him his legal rights and will not suddenly violate the law by rapidly accelerating the car be-

yond the speed limit and reach the intersection before Mr. Washburn had a chance to cross."

We agree with Mr. Justice ADAMS that the question of contributory negligence was for the jury rather than the court, but do not agree that appellant's criticism of the trial judge's charge is unfounded.

The second quoted paragraph of the charge concludes with a patently argumentative and prejudicially categorical sentence; a sentence which assumes as established a controverted fact going to the heart of plaintiff's theory of recovery in this intersectional collision case. The intersection being uncontrolled except by the right-of-way statute (CLS 1961, § 257.649 [Stat Ann 1960 Rev § 9.2349]), and plaintiff having approached it from the east while defendant's automobile approached—roughly equidistant—from the north at approximately the same rate of speed, such theory was that the defendant's driver upon imminent convergence suddenly accelerated to an unlawful rate of speed and caused the collision by such act of sudden acceleration.[1] Plaintiff's theory was and is valid if factually established. The trouble is that its factual premise was sharply disputed and should not have been accepted and declared, without due "if you find" or similar qualification, in the course of jury instruction.

It was, to say the least, testimonially controverted that the defendant's driver "suddenly" violated the law "by rapidly accelerating the car beyond the speed limit," thereby reaching "the intersection before Mr. Washburn had a chance to cross." In short, the trial judge at such point in his charge told the jury that Mr. Washburn had a right to

---

[1] It should be noted, to avoid possible misunderstanding, that the defendant funeral director's automobile was not an ambulance and was not on a so-called emergency run. The driver was on his way to pick up defendant's daughter at grade school. Coincidentally, plaintiff was on his way to the same school to pick up his daughter.

assume (if he—Washburn—was nearest to the intersection, or entering it, or within it) that the defendant's driver would not "suddenly violate the law" by rapidly accelerating, "beyond the speed limit" before he—Washburn—"had a chance to cross." It was for the jury to say whether Colgan did so violate, accelerate, and deny first passage; not for the trial judge so to affirm or infer in his charge to the jury. Trial judges must guard against one-sided or argumentative requests to charge and must avoid requested instructions which assume or take as established those facts which the parties, by their proofs, have placed in controversy. The sentence in question should have been eliminated from plaintiff's request to charge, the preceding sentence having covered the ground fully and fairly.

We agree in essence with defendant's counsel when they. say that "Plaintiff's whole theory was dependent upon the claim of sudden acceleration by Colgan immediately before entering the intersection"; also when they say that "The questioned instruction, drawn by plaintiff's counsel, states as a fact that the defendant [driver] did accelerate suddenly." We therefore hold such instruction to be reversibly erroneous.

---

For separate reasons, given with detail below, we agree with Mr. Justice O'Hara that we should note from this record what the tenth circuit calls "a constantly growing tendency in cases of this kind for an investigating officer to assume the prerogative of assessing liability", which "is the responsibility of the trier of the facts" (*Padgett* v. *Buxton-Smith Mercantile Co.* (CCA 10), 262 F2d 39, 42).[2]

---

[2] The court said, in *Padgett* (p 42):
"The expressed opinion of the highway patrolman did not serve to enlighten the jury in respect to a matter outside its competence and should not have been admitted. While we are loath to interfere

Moreover, we would go further, and commit this Court anew to the established rule that opinions of causation in negligence cases, "where the subject matter of the inquiry is of such a character that it may be presumed to lie within the ordinary experience of all men of common education" (quotation from American Jurisprudence, as quoted in *Kelso* v. *Independent Tank Co.* (Okla), 348 P2d 855, more fully quoted and cited *post*), whether offered by experts or lay witnesses, are uniformly excluded as invasive of the province of the jury. See *Smith* v. *Sherwood Township*, 62 Mich 159; *Ireland* v. *Cincinnati W. & M. R. Co.*, 79 Mich 163; *Kelley* v. *Detroit L. & N. R. Co.*, 80 Mich 237 (20 Am St Rep 514); *Hertzler* v. *Manshum*, 228 Mich 416; *Riffel* v. *Union Truck Co., Ltd.*, 180 Mich 673; *Derrick* v. *Blazers*, 355 Mich 176 (69 ALR2d 1143); *McNelley* v. *Smith*, 149 Colo 177, 181, 182 (368 P2d 555); *Lee* v. *Dickerson*, 133 Ind App 542 (183 NE2d 615); *Smith* v. *Clark*, 411 Pa 142, 147 (190 A2d 441); *Lewis* v. *Schaffer* (Okla), 369 P2d 639; *Flores* v. *M-K-T R. Co.* (Tex Civ App), 365 SW2d 379; *Kelso* v. *Independent Tank Co.* (Okla), 348 P2d 855; *Ordner* v. *Reimold* (CCA 10), 278 F2d 532; *Womack* v. *Banner Bakery, Inc.*, 80 Ariz 353 (297 P2d 936); *Rettler* v. *Ebreck* (ND), 71 NW2d 759; *Swink* v. *Colcord* (CCA 10), 239 F2d 518, and "Admissibility of opinion evidence as to the cause of an accident or occurrence," 38 ALR2d 13.

Exemplary quotations, taken from cases just cited, are submitted below.

---

with the broad discretion of the trial courts in matters of this kind, the opinion came from an officer of the law whose badge of authority gave it evidential significance which may not be dismissed as harmless or nonprejudicial. As an official opinion of a fact matter within the knowledge or comprehension of the members of a jury it carries a weight which tends to usurp the judicial function."

"During presentation of the defense, McNelley too presented an expert who attempted to testify as to the cause of the accident. This expert's opinion was to be based solely on photographs of the vehicles taken at the scene of the accident. Under the circumstances presented here, the trial court correctly refused to permit this evidence. It is interesting to note that in the cases cited by counsel in defense of this exclusion the courts have held that jurors of ordinary intelligence are just as capable of reasoning backward from the evidence in automobile accidents, such as the one under consideration here, and making a correct analysis as to what has happened as is the expert. See *e.g., Carmody v. Aho,* 251 Minn 19 (86 NW2d 692)." *McNelley v. Smith,* 149 Colo 177, 181, 182.

"In *Jackson v. Brown* (Okla), 361 P2d 270, it was stated in the body of the opinion (p 271) that a traffic officer who has qualified as an expert witness 'may give only physical facts disclosed in course of his investigation. He should not be allowed to voice any opinion concerning the cause of the collision. *Maben v. Lee* (Okla), 260 P2d 1064.'

"The second paragraph of the syllabus [by the court] to the cited case [*Jackson*] reads as follows:

" 'In a negligence action growing out of a motor vehicle collision, it was reversible error to admit, over timely objection of the plaintiff, conclusions of investigating officer, that the plaintiff was making an improper turn at the time of the collision.' " *Lewis v. Schaffer* (Okla), 369 P2d 639, 641.

, "It further appears that an investigating police officer witness was permitted to give his opinion as to the cause of the accident and stated that it 'was failure *to react* to make a left curve of the highway.' * * * This conclusion was for the jury and not the witness. Opinion evidence, under the circumstances, was totally unnecessary, inadmissible, and opened the door to the highly prejudicial response. See *Graham v. Pennsylvania Co.* (1891), 139 Pa 149

(21 A 151, 12 LRA 293); *Delair* v. *McAdoo* (1936), 324 Pa 392 (188 A 181); *Gordon* v. *Robinson* (CCA 3, 1954), 210 F2d 192; *Giffin* v. *Ensign* (CCA 3, 1956), 234 F2d 307. The witness's answer was tantamount to saying that the driver's condition caused him *not* to make the curve. Since the police officer did not view the actual occurrence, his opinion was speculative and an invasion of the jury's exclusive prerogative." *Smith* v. *Clark,* 411 Pa 142, 147.

"To permit the officer, though an expert, to testify as to his opinion concerning the failure to yield the right-of-way would be to allow him to express an opinion on a question of law or, in any event, a mixed question of law and fact. It is well established that a witness, even an expert, cannot testify as to his opinion of ultimate negligence or the actual cause of a calamity (citing cases)." *Flores* v. *M-K-T R. Co.* (Tex Civ App), 365 SW2d 379, 382, 383.

"In the instant case, the patrolman, prior to expressing the opinion complained of, testified to the approximate point of impact of the vehicles with reference to the center line of the highway, based on debris and other physical evidence, and described the location and extent of damage to the respective vehicles as he observed them at the scene of the collision. Such testimony was clearly admissible under the above-quoted rule and the cases cited. It did not go to an ultimate issue for the jury, and was not prejudicial to the defendant.

"The opinion complained of, however, was as to the *cause of the collision.* In 20 Am Jur, Evidence, § 817, p 687, the following rule is stated:

" 'It is clear that an expert will not be permitted to give opinions as to the cause of a particular occurrence or accident, where the subject matter of the inquiry is of such a character that it may be presumed to lie within the ordinary experience of all men of common education, moving in ordinary

walks of life; in such case the jury itself is competent to draw all necessary conclusions from the facts.' * * *

"We have followed and applied the above-quoted rule, reversing judgments because of the erroneous admission of such testimony. *Washita Valley Grain Co.* v. *McElroy* (Okla), 262 P2d 133, opinion of patrolman that plaintiff was not negligent; *Wade* v. *Wolf* (Okla), 312 P2d 493, testimony of patrolman that he found no improper action on part of defendant; and *Maben* v. *Lee* (Okla), 260 P2d 1064, 1065, *opinion of patrolman that collision was caused by defendant.*" *Kelso* v. *Independent Tank Co.* (Okla), 348 P2d 855, 857.

*Rettler* v. *Ebreck,* the cited North Dakota case, takes the applicable rule from 3 Jones, Evidence (2d ed), § 1243, pp 2284, 2285, as follows (71 NW2d 759, 763):

"No better or more constant application of the general rule excluding opinions can be found than in negligence cases. It has been repeatedly held that, where the ultimate fact for the jury is whether the conduct of a certain person was careless, reckless, or negligent, it is not competent for a witness to express an opinion, conclusions, or judgment thereon. It is the province of the jury to determine the ultimate fact whether conduct was careless, reckless, or negligent, and this right may not be encroached upon by witnesses. It is the function of the witness to state evidentiary facts and the function of the jury to draw such conclusions as the facts warrant."

In this Washburn case Trooper Wade, expertly qualified by experience and training as an investigator and reconstructor of highway motor collisions, was sworn by plaintiff and interrogated hypothetically in 3 principal respects. The first question,

preceded by 2 printed pages of hypothetically pre-sented assumptions, was this:

"Now, first assuming those facts, Trooper Wade, do you have an opinion as to how this accident happened?"

There was no objection and so the witness proceeded to give his opinion. In essence it was that the plaintiff's car was "into the intersection first by 25 feet." (This is cutting things pretty fine for intersectional right-of-way purposes, especially when the defendant motorist was on the plaintiff's right.) The next question was:

"Can you tell from your examination of the photos and considering the damage to the rear portions of the 2 vehicles then what was the behavior of the cars?"

Again, the witness gave his opinion in the absence of objection. Finally the witness was asked whether he had an opinion "as to a range of speed of the Lucas car in connection with this accident at the time of the impact?".

The witness had such an opinion, and gave it, again there being no objection. He was not, as the reader will gather, an eyewitness of the collision. The facts upon which his opinions were founded included a measurement examination of the scene of collision, examination of damage done to 1 of the cars after the collision, photos and other information given admissibly by other witnesses.

For want of raising and saving the question for review, no reversible error occurred on account of admission before the jury of Trooper Wade's highly inadmissible answers to the quoted questions. Nevertheless, since this Court like the Federal supreme court has "the power to notice a 'plain error' though it is not assigned or specified" (*Silber* v.

*United States,* 370 US 717 [82 S Ct 1287, 8 L ed 2d 798], and cases therein cited),[3] the foregoing is written in effort to eliminate future reception in our trial courts of like opinions.

As for GCR 1963, 605, the concluding sentence thereof does not stand in conflict with the cases and authorities cited in the body of this division of the foregoing opinion.[4]  The cited testimony of Trooper Wade was not "otherwise admissible."  Any other construction of the rule would raise at once serious question as to the constitutionality of its concluding sentence.  See Const 1908, art 2, § 13, and Const 1963, art 1, § 14.

For prejudicial error of instruction, we would reverse and remand for retrial with costs to defendant.

KAVANAGH, C. J., and KELLY, BLACK, and SMITH, JJ., concurred with SOURIS, J.

---

[3] For like Michigan authority, see *Thomas* v. *Morton Salt Co.,* 258 Mich 231, and *Dation* v. *Ford Motor Co.,* 314 Mich 152 (19 NCCA NS 158).

[4] Such concluding sentence reads:

"Testimony of expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."